**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(ALEXANDRIA DIVISION)**

MELANIE DECANIO,

Plaintiff,

v.

DELOITTE & TOUCHE LLP and SCOTT WILSON

Defendants.

No.: 1:25-cv-01980-AJT-IDD

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCLOSURE OF DOCUMENTS WRONGLY DESIGNATED AS PRIVILEGED OR WORK PRODUCT AGAINST DEFENDANT DELOITTE & TOUCHE LLP**

Robert W. Ray
Richard M. Reice (pro hac vice)
Mari Bonthuis (pro hac vice)
Eric Small (pro hac vice)
Sterlington, PLLC
228 Park Avenue S #97956
New York, New York 10003
(212) 433-2853
robert.ray@sterlingtonlaw.com
richard.reice@sterlingtonlaw.com
mari.bonthuis@sterlingtonlaw.com
eric.small@sterlingtonlaw.com

Attorneys for Plaintiff Melanie DeCanio

Plaintiff Melanie DeCanio ("Plaintiff" or "DeCanio") respectfully submits this Memorandum of Law in support of her Motion to Compel Disclosure of Documents Wrongly Designated as Privileged or Work Product Against Defendant Deloitte & Touche LLP ("Deloitte") pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Rule 37 of the Local Rules for the United States District Court Eastern District of Virginia.

## INTRODUCTION

This is the second motion to compel the production of documents Plaintiff has been forced to file against Deloitte. This motion, filed reluctantly but with necessity, follows on from numerous requests over the last two weeks by Plaintiff to Deloitte for a privilege log and to meet and confer which have gone ignored. Given Deloitte's history of tactical delay, and because time is of essence due to impending discovery deadlines, Plaintiff is compelled to file the instant motion. Plaintiff asks the Court to reject Deloitte's additional and purposeful efforts to avoid discovery, to compel Deloitte to produce all responsive documents, and to deny Deloitte the future ability to claim privilege as a sanction for its blatant abuse of the privilege. Plaintiff further asks to be reimbursed by Deloitte for the cost and fees related to having to make this motion.

## FACTS

In February 2025, colleagues of Plaintiff reported sexual misconduct by her supervisor, Defendant Wilson, which included unwanted sexual advances and an attempted sexual assault.[1] Dkt. No. 1, Compl. ¶¶ 25–29, 42–43. Deloitte's [redacted] team began an investigation into Wilson, one that quickly turned into an interrogation of Plaintiff. *Id.* ¶ 43. Several weeks later, Deloitte terminated Plaintiff purportedly for "cause" based on actions Plaintiff took – at the

[1] As discovery issues have already been considered and adjudicated by the Court, only the facts relevant to this motion are included here.

direction of Wilson – during an audit of Client A.[2] Wilson was also terminated based on his interactions with Plaintiff and his actions during the relevant audit. Plaintiff subsequently filed her complaint in this case on November 6, 2025, asserting claims against Deloitte for sex discrimination (Count I), hostile work environment (Count II), and retaliation (Count III) and claims against Wilson for battery (Count V) and intentional infliction of emotional distress (Count VI).

On February 9, 2026, Plaintiff served her Requests for Production (the "Requests") on Deloitte, a number of which sought documents concerning the investigation and termination of both Plaintiff and Wilson. Declaration of Richard Reice ("Reice Declaration"), Exhibit 1, Request Nos. 14, 19–28, 33, 34, 38, 46, 47, 51 (collectively the "Investigation Requests"). Deloitte served its initial objections to the Requests on February 24, 2026, and its combined objections and responses on March 11, 2026. Reice Decl. ¶ 4 & Exhibit 2. In addition to a myriad of boilerplate objections, Deloitte objected to each of the Investigation Requests "to the extent it seeks documents that are protected from disclosure by the attorney-client privilege and/or the work product doctrine." Reice Decl., Exhibit 2.

Deloitte made its first production of documents on April 13, 2026, including documents responsive to the Investigation Requests. Reice Decl. ¶ 7. Many of these documents, however, bore significant redactions, with notations simply stating "Redacted – Privileged." These documents fall into four general categories.

The first set of documents are two documents with the headings [redacted] which are Bates stamped DELOITTE_000531–534 [redacted]

[2] The Court has ordered that the name of this client not be made public.

[redacted] Reice Decl., Exhibit 4. [redacted] *Id.*; Reice Decl. ¶ 21. [redacted] Reice Decl., Exhibit 4.

The second batch of documents are labeled [redacted] and Bates-stamped DELOITTE_00535–536, 000542–545, 000566–567, 000968–972, and 001048–1051 [redacted]. Reice Decl., Exhibit 5. The [redacted] *Id.*; Reice Decl. ¶ 22.

The third set are a group of documents labeled, in part, as [redacted] DELOITTE_000552–564 [redacted] Reice Decl., Exhibit 6. [redacted] *Id.*; Reice Decl. ¶ 23. [redacted]. *Id.* ¶ 22.

The final group of documents are as follows:

1. DELOITTE_000568, [redacted] Reice Decl., Exhibit 7. [redacted]

2. DELOITTE_000571–576, [redacted] Reice Decl.,

Exhibit 8. [redacted] eice Decl. ¶ 24. [redacted] Reice Decl., Exhibit 8.

3. DELOITTE_000583–586 (and duplicates at 000767–771), [redacted] Decl., Exhibit 9. [redacted]

4. DELOITTE_000587–590, [redacted] Reice Decl., Exhibit 10. [redacted]

Under the parties' Rule 26(f) Report and Joint Discovery Plan, which was approved by the Court, Deloitte's privilege log for the above documents was due on April 28, 2026, fifteen days after the production from which information or documents were withheld. Dkt. No. 48 ¶ 5. When no privilege log was provided, Plaintiff raised the issue with Deloitte during an April 30 meet-and-confer. Deloitte stated that it was working on such a log but did not identify a date certain on which it would be provided. Reice Decl. ¶ 15.

Another week passed without production of a privilege log from Deloitte. Reice Decl. ¶ 16. Seeking nonetheless to engage Deloitte regarding its privilege claims, Plaintiff emailed Deloitte on Monday, May 11, identifying issues with privilege claims concerning the documents identified above and asking for counsel's availability on Tuesday or Wednesday. Reice Decl., Exhibit 11 at 3. Deloitte's response the next day, May 12, stated simply "Let us review your comments and then we can schedule a meet and confer." *Id.* at 2-3. Plaintiff followed up again on Wednesday, May 13, asking Deloitte's availability to meet and confer. *Id.* at 2. Deloitte's response, sent at 3:05 p.m. on Friday, May 15, was the following:

1. The redacted material on DELOITTE_000531-32 [redacted]

2. The redacted material on DELOITTE 000533-34 [redacted]

3. The redacted material on DELOITTE 000535-36 [redacted]

4. The redacted material on DELOITTE 000542-45 [redacted]

5. The redacted material on DELOITTE 000546-49 [redacted]

6. The redacted material on DELOITTE 000553 [redacted]

7. The redacted material on DELOITTE 000554-56 [redacted]

8. The redacted material on DELOITTE 000569-70 [redacted]

9. The redacted material on DELOITTE 000583-90 [redacted]

10. The redacted material on DELOITTE 000968-72 [redacted]

11. The slipsheeted material at DELOITTE 000976 [redacted]

*Id.* at 1. Deloitte did not respond to Plaintiff's request for a meet-and-confer call, however.

Plaintiff remains committed to the meet and confer process and would like to identify and narrow its disputes with Deloitte regarding privilege. But mindful of a fact discovery deadline just two months away, and Deloitte's history of deferment and delay, Plaintiff has proceeded with the

filing of this motion. Plaintiff should not have to be in the position of having to constantly remind Deloitte of its discovery obligations and chase it for a response to Plaintiff's requests.[3]

## LEGAL STANDARD

### A. Attorney-Client Privilege Requirements

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Upjohn Co. v. U.S.,* 449 U.S. 383, 389 (1981). Because it protects certain communications from disclosure, the privilege is narrowly construed and recognized "only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir. 1998) (citing *Trammel v. U.S.,* 445 U.S. 40, 51 (1980)).

As stated by the Court of Appeals in *Hawkins*, the attorney-client privilege applies only if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

148 F.3d at 383 (citing *U.S. v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982)).

It is Deloitte, as the party asserting the attorney-client privilege, that must prove that the attorney-client privilege applies, that the privilege protects the documents in question, and that

---

[3] For example, on Monday May 11, 2026, the parties had a meet-and-confer regarding the scheduling of depositions. Deloitte stated during that call, and in an email sent that evening, stated it would get back to Plaintiff's counsel with dates for multiple witnesses. Yet as of the date of this motion, four days later, Deloitte's counsel has failed to respond. Reice Decl. ¶ 26.

Deloitte did not waive the privilege. *Fed. Election Comm'n v. Christian Coal.*, 178 F.R.D. 61, 65–66 (E.D. Va. 1998), order aff'd in part, modified in part, 178 F.R.D. 456 (E.D. Va. 1998) (citing *U.S. v. Aramony,* 88 F.3d 1369, 1389 (4th Cir.1996) and *U.S. v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982)). Additionally, Deloitte must prove that both Deloitte and its attorney, not just Deloitte alone, expected the document to remain confidential. This burden requires Deloitte to explain, through a privilege log or *ex parte* submissions, if necessary, "the significance or meaning of an otherwise cryptic document" for which it is claiming privilege. *Fed. Election Comm'n*, 178 F.R.D. at 65. In addition, privilege logs must be detailed enough in their description and basis for privilege to allow "opposing parties to file meaningful motions to compel. Here, we don't even have a privilege log to guide us. The failure by Deloitte to provide a privilege log is a separate and independent ground to deny Deloitte the ability to claim privilege, regardless of type. *See ePlus Inc. v. Lawson Software, Inc.,* 280 F.R.D. 247, 257 (E.D. Va. 2012) (holding that inadequate privilege log entries warranted waiver of the privilege).

Additionally, documents labeled "privileged" cannot maintain that status if non-attorneys were included in the transmission of the redacted documents and were customarily reviewed by both legal and non-legal personnel. "If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, it cannot be said that the primary purpose of the document is to secure legal advice." *U.S. v. IBM Corp.,* 66 F.R.D. 206, 213 (S.D.N.Y. 1974). Nor does it apply to any communication "as to which a business purpose would have served as a sufficient cause, *i.e.*, any communication that would have been made because of a business purpose even if there had been no perceived additional interest in securing legal advice." *U.S. v. Cohn,* 303 F. Supp. 2d 672, 684–85 (D. Md. 2003) (citing *McCaugherty v. Siffermann,* 132 F.R.D. 234, 238 (N.D.Cal.1990) and *Fisher v. U.S.,* 425 U.S. 391, 403 (1975)); *see also In re Allen*, 106 F.3d 582,

602 (4th Cir. 1997) ("Of course, not all communications between an attorney and client during attorney-conducted investigations constitute legal work entitled to attorney-client privilege.").

In this same vein, "[w]hat would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." *F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 71 (D. Md. 1998); *see also Duplan Corp. v. Deering Milliken, Inc.,* 397 F. Supp. 1146, 1168 (D.S.C. 1974) ("It is axiomatic that if a document is not privileged in the hands of the client, it does not become privileged merely because it is given to an attorney").

**B. The Work Product Privilege**

It is well-settled law that material which reflects an attorney's efforts to investigate and prepare a case are protected from discovery if such material was created in "anticipation of litigation." *Hickman v. Taylor,* 329 U.S. 495, 508–10 (1947); *RLI Ins. Co. v. Conseco, Inc.,* 477 F. Supp. 2d 741, 746 (E.D. Va. 2007). However, otherwise identical work by an attorney is not protected by the work-product doctrine if it was created in the "ordinary course of business." *RLI Ins.*, 477 F. Supp. 2d at 746. To distinguish between "anticipation of litigation" and "ordinary course of business," courts have held that an attorney's work is protected when it was created *"because of"* the prospect of litigation. *Id.* (citing *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.,* 967 F.2d 980 (4th Cir.1992)). "The 'because of' standard is designed to help district courts determine the 'driving force' behind the preparation of the work product." *RLS Ins.*, 477 F. Supp. 2d at 747. The preparer of work product must face "an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Id.* "The preparation of work merely because an attorney 'anticipates the contingency' of litigation is not

sufficient to qualify the work for the protection afforded by the work-product doctrine." *Id.* (citing *National Union*, 967 F.2d at 984).

As with the attorney-client privilege, the party asserting work-product protection bears the burden to show that the "work product" was prepared in anticipation of litigation. *RLI Ins.*, 477 F. Supp. 2d at 748 (citing *Sandberg v. Va. Bankshares, Inc.,* 979 F.2d 332, 355 (4th Cir.1992)). To meet this burden, Deloitte must be able to "come forward with a specific demonstration of facts supporting the requested protection." *Suggs v. Whitaker,* 152 F.R.D. 501, 505 (M.D.N.C.1993); *see also N. Carolina Elec. Membership Corp. v. Carolina Power & Light Co.,* 110 F.R.D. 511, 515 (M.D.N.C.1986) (noting that courts require the applicability of the privilege by a showing that "precise facts exist to support the claim of privilege").

## ARGUMENT

### A. By Failing to Produce a Privilege Log, Deloitte Has Waived Its Privilege Objections.

This Court has already stricken Deloitte's assertion of the boilerplate objections "vague and ambiguous," "overly broad," and "unduly burdensome" in response to Plaintiff's Requests. Dkt. No. 110. Although Deloitte's assertions of attorney-client privilege and work product protection were similarly formulaic, it agreed to provide a privilege log that "expressly assert[ed]" those objections and "describe[ed] the nature of the withheld or redacted materials in a manner that enables other parties to assess the claim[.]" Dkt. No. 48 ¶ 5. This log was due within fifteen (15) days of the document production from which material was withheld or redacted. *Id.* Here, that production was made on April 13, making Deloitte's privilege log due on April 28, 2026 – 2 ½ weeks ago. Reice Decl. ¶ 7.

A failure to make timely objections in response to document requests may result in waiver. *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 247 (M.D.N.C. 2010); *Mills v. E. Gulf*

*Coal Prep. Co.*, 259 F.R.D. 118, 132 (S.D. W. Va. 2009); *Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005). The burden of avoiding waiver rests on the objecting party which must show "good cause" why waiver should not occur. *Hall*, 231 F.R.D. at 474. Factors considered in evaluating "good cause" include the length of delay, the reason for delay, whether there was any dilatory or bad faith action, whether the party seeking discovery has been prejudiced, and whether waiver would impose an "excessively harsh" result. *Makina ve Kimya Endustrisi A.S. v. Zenith Quest Corp.*, 2025 WL 1709679, at *5–6 (W.D. Va. June 18, 2025) (quoting *Hall*, 231 F.R.D. at 474)).

In a case with depositions fast approaching, and where discovery ends on July 17, 2026, Deloitte's delay has caused Plaintiff prejudice by forcing counsel to devote the time and effort to this motion. It is unlikely Plaintiff will receive any of the redacted or withheld documents prior to her deposition on June 3, 2026. Reice Decl. ¶ 25. The parties are attempting to schedule depositions of individuals on the purportedly privileged documents, including Fine and Van Zandt, *id.* ¶ 26, but without knowing if and when additional documents will be produced. Moreover, Deloitte's failure to provide a timely privilege log and ignorance of requests to meet and confer is "part of a larger calculated strategy of noncompliance" with which this Court is familiar and which likewise weighs against a finding of good cause. *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 259 (M.D.N.C. 2001).

Deloitte may argue that its email of May 15 somehow cures its failure to provide a privilege log. Reice Decl., Exhibit 11 at 1. But that email lacks the necessary elements of a log; it does not provide the date of the document, the author or sender of the document, the recipient of the document, or the privilege asserted. Dkt. No. 48 ¶ 5. Because Deloitte has failed to come forward with any such showing at all and for this reason alone all documents it has labeled privilege should lose that designation.

**B. <u>The Documents at Issue Are Not Protected by Attorney-Client Privilege or as Work Product</u>**

Even if Deloitte had provided sufficient information to support its claims of privilege and/or work product protection, those claims would fail.

1. [redacted]

Applying these requirements to the case at bar, documents produced in the ordinary course of Deloitte's business such as documents generated by Deloitte [redacted] as it carries out its normal function of investigating allegations of employee misconduct are not work product. This is true even if the document is sent to counsel or the drafter is concerned about litigation sometime in the future, yet none is threatened or pending. As the court in *RLI Ins. Co. v. Conseco, Inc.* observed, "because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet the mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity." 477 F. Supp. 2d at 747 (citing *National Union,* 967 F.2d at 984).

Applying the foregoing standards to the [redacted] it becomes apparent that both sets of documents could not qualify for exclusion from production as "work product." All of the documents pertain to materials gathered by or relevant to the [redacted] of Wilson or DeCanio. Reice Decl., Exhibits 4, 5. [redacted]. Compl. ¶¶ 39–42; Reice Decl., Exhibits 4, 5. The parties on the documents were identified by Deloitte as those who led or participated in the investigation into Wilson's conduct. Reice Decl., Exhibit 3 at 5–6 (Responses to Interrogatory Nos. 1 and 2). And while such documents might state that they were "[redacted]

[redacted], and there was no litigation threatened or pending at the time the information gathered or the emails authored. Indeed, in most cases, [redacted], was merely cc'd on the emails or in the case where the documents were sent [redacted]

For similar reasons, [redacted] are not protected by attorney-client privilege. An attorney was unnecessary to conduct the investigation of Plaintiff and Wilson, and Deloitte has consistently characterized Plaintiff's termination as supported by a "legitimate business reason" due to a violation of audit guidance. *See, e.g.,* Dkt. No. 100 at 2–3. Yet Deloitte has redacted the entire contents of these documents. It is improbable that every sentence in the documents was either a statement for the purpose of securing legal advice or the provision of legal advice.

Deloitte's belated descriptions do not solve this problem. [redacted] Reice Decl., Exhibit 11. The mere presence of a lawyer at a meeting or on an email does imbue a document with privilege. *See F.C. Cycles*, 184 F.R.D. at 71.

2. [redacted]

Facially, the [redacted] appear related to the Wilson investigation (despite their most curious label) by date, context, and content because they appear to relate to [redacted]

Given these factors, Deloitte's effort to withhold the information in the documents from disclosure on the basis of attorney-client privilege must fail.

Again, copying [redacted] on an email chain is an insufficient basis for claiming privilege. *See e.g.*, *F.C. Cycles*, 184 F.R.D. at 71. Second, the fact that most of the individuals receiving the redacted information are not lawyers, but Deloitte [redacted], further negates any viable claim of privilege. *IBM Corp.*, 66 F.R.D. at 206; *Cohn*, 303 F. Supp. 2d at 684 (communications must be exchanged "without the presence of strangers"). Third, it is fair to conclude that the documents contain information secured in the normal course of Deloitte's HR operations, namely conducting a sexual harassment investigation, at a time when no litigation was contemplated or threatened. Thus, they were not documents solely created for the purpose of client-attorney communications as required under *Hawkins v. Stables,* 148 F.3d at 383. Thus, Deloitte should be required to produce all of the [redacted] documents.

For similar reasons, any claim of work-product protection must fail. There is no reason to believe that, at the time the [redacted] documents were created, Deloitte anticipated litigation. These documents were part of a routine HR investigation, a regular business event, and are thus not shielded from disclosure.

3. [redacted]

For the reasons stated above, this final group of documents is not privileged. [redacted] Reice Decl. Exhibit 7. Nevertheless, this document contains [redacted] Based on the face of the document, it cannot qualify for exclusion under the attorney-client or work product privilege.

The same is true with the [redacted] Reice Decl. Exhibits 9 & 10. [redacted] Deloitte simply decided to redact the document and withhold multiple pages from production, seemingly without reason.

Last, [redacted] appears to contain the [redacted] Reice Decl. Exhibit 8 & ¶ 24. As neither party is a lawyer and there was no pending or threatened litigation, there is absolutely no basis for claiming privilege. To Deloitte, the use of the "privilege" designation is simply a tool to avoid turning over otherwise responsive documents. Deloitte knows this is wrong, or should know it is wrong, and yet it disregards its obligations under the Federal Rule of Civil Procedure. This misconduct is worthy of sanctions.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion to compel and order Deloitte to turn over all documents improperly redacted/withheld as "Privileged" and deem Deloitte to have waived any claims of privilege as a sanction for its failure to provide a privilege log and to meet and confer, and awarding Plaintiff her reasonable expenses, including attorneys' fees, incurred in bringing this Motion pursuant to Rule 37(a)(5)(A).

Dated: New York, New York
May 15, 2026

Respectfully submitted,

By: /s/ Robert W. Ray

Robert W. Ray, VSB # 26146
Richard M. Reice (pro hac vice)
Mari Bonthuis (pro hac vice)
Eric Small (pro hac vice)
Sterlington, PLLC
228 Park Avenue S #97956
New York, New York 10003
(212) 433-2853
(212) 433-2831
robert.ray@sterlingtonlaw.com
richard.reice@sterlingtonlaw.com
mari.bonthuis@sterlingtonlaw.com
eric.small@sterlingtonlaw.com

*Attorneys for Plaintiff Melanie DeCanio*