IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MELANIE DECANIO, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-1980 (AJT/IDD) |
| | ) | |
| DELOITTE & TOUCHE LLP, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Melanie Decanio's ("Plaintiff") Motion to Compel Disclosure of Documents Wrongly Designated as Privileged or Work Product Against Defendant Deloitte & Touche LLP [Dkt. No. 111] ("Motion to Compel" or "Motion"). This Motion has been briefed *ad nauseam*.[1] The hearing for this matter was held on May 29, 2026. In preparation for this hearing, Defendant Deloitte & Touche LLP ("Deloitte" or "Defendant") was required to provide Plaintiff with a privilege log that addresses any and all documents that are responsive to Plaintiff's discovery requests and all privileges that the Defendant is asserting. *See*

---

[1] The Court considered the following briefings when ruling on this matter along with exhibits and declarations submitted thereto: the Memorandum of Law in Support of Plaintiff's Motion to Compel [Dkt. No. 112]; Plaintiff's Notice Regarding the parties' Meet and Confer on Plaintiff's Motion to Compel and Identification of Remaining Issues for Court Resolution [Dkt. No. 133]; Deloitte & Touche LLP's Notice of Remaining Issues on Plaintiff's Motion [Dkt. No. 134]; Defendant Deloitte & Touche LLP's Notice Regarding Documents for *In Camera* Review and Request to Submit Document in Electronic Form [Dkt. No. 146]; Plaintiff's Motion for Leave to File Supplemental Declaration in Support of Motion to Compel [Dkt. No. 150] and the Memorandum in Support of the Motion for Leave [Dkt. No. 151]; and Defendant Deloitte & Touche LLP's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Leave to File Supplemental Declaration [Dkt. No. 154]. While conducting the *in-camera* review, the Court held a telephone conference with all of the parties to address clarifying questions that the Court had regarding the privilege log and the documents submitted thereto. After the telephone conference, and as ordered by the Court, Deloitte & Touche LLP filed its Supplemental Notice in Response to the Court's Inquiry Related to its *In Camera* Review [Dkt. No. 168]. No further hearings or conferences have been held and no other briefings have been received regarding the Motion to Compel.

1

Dkt. No. 132. At the conclusion of the hearing, the Court ordered the following: (1) Deloitte review and revise its privilege log; (2) the parties meet and confer to compile a sample of documents to submit to the Court for an *in-camera* review; and (3) Deloitte submit the finalized privilege log and all documents needed for the *in-camera* review to the Court by June 5, 2026. *See* Dkt. No. 143. The undersigned United States Magistrate Judge then took this matter under advisement to conduct an *in-camera* review of Deloitte's privilege log and documents submitted thereto. Upon careful consideration of the voluminous record and all arguments presented, the Motion to Compel [Dkt. No. 111] is **GRANTED in part and DENIED in part.**

## I.     INTRODUCTION

This case was initiated on November 6, 2025. The case involves Plaintiff's claims of sex discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Virginia Human Rights Act, as well as wrongful discharge, battery, and intentional infliction of emotional distress against the Defendants. *See* Dkt. No. 1 at 14–19. Discovery in this action officially began on January 11, 2026, pursuant to the District Judge's Scheduling Order [Dkt. No. 34]. On February 9, 2026, Plaintiff served her Requests for Production (the "Requests") on Deloitte and Touche LLP. Mem. in Supp. of Mot. to Compel at 3. Deloitte then served its initial objections to the Requests on February 24, 2026, and responses on March 11, 2026. *Id.* The basis of Deloitte and Touche LLP's objections were that Plaintiff's Requests sought documents that were protected from disclosure by the attorney-client privilege and/or the work product doctrine. *Id.* The parties allegedly discussed resolving this matter through Deloitte and Touche LLP producing a privilege log. However, the parties were unable to resolve this matter on their own.

Subsequently, on May 15, 2026, Plaintiff filed its Motion to Compel Disclosure of Documents Wrongly Designated as Privileged or Work Product Against Defendant Deloitte & Touche LLP [Dkt. No. 111]. The Defendant opposes disclosure of the documents on its privilege log on the basis that the documents either consist of internal communications with counsel, were created at the direction of Deloitte's Office of General Counsel in anticipation of litigation, or reflect counsel's mental impressions about legal strategy. *See* Dkt. No. 134. In response, Plaintiff argues that several documents on the privilege log should be disclosed because either the primary purpose of the communications with legal counsel was for business purposes rather than legal or the document was not made in anticipation of litigation given the timeframe the document was created in connection with the dates of the talent relations investigation and the audit investigation. *See* Dkt. No. 133.

After reviewing the numerous filings regarding the Motion to Compel and hearing oral argument on this matter on May 29, 2026, the Court took this mater under advisement to conduct an *in-camera* review. The Court received the Defendant's revised privilege log on June 5, 2026. After conducting the *in-camera* review and considering all briefings and oral argument regarding this matter, the Court provides the following decision.

## II.    APPLICABLE LAW

Federal Rule of Civil Procedure 26(b)(1) permits discovery of all nonprivileged matters that are relevant to any party's claim or defense. Those matters, however, must be proportional to the needs of the case. Relevance is construed broadly, and relevant information does not need to be admissible evidence at trial to be discoverable. The scope of discovery is therefore broad, but is limited by consideration of relevance, proportionality, and protection of privileged communications. FED. R. CIV. P. 26(b)(1); *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,

351 (1978). Federal Rule of Evidence 501 provides that privileges in civil cases that are governed by federal law are determined in accordance with the principles of common law as interpreted in federal courts. The party asserting a privilege bears the burden of establishing its applicability. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

When a party receives a discovery request, and they are withholding documents or communications on the basis of a privilege, the Court may conduct an *in-camera* review to determine whether the asserted privilege applies and whether the materials must be produced notwithstanding the claimed privilege. *United States v. Zolin*, 491 U.S. 554, 568–72 (1989). *In-camera* review of allegedly privileged materials is appropriate when the party seeking review first makes a sufficient factual showing that there is a good-faith belief by a reasonable person that inspection of the materials may reveal evidence bearing on the applicability or defeat of the asserted privilege. *Zolin*, 491 U.S. at 570, 572; *United States v. Regan*, 281 F. Supp. 2d 795, 806 (E.D. Va. 2002). Once the requisite threshold showing has been made, the decision whether to conduct an *in-camera* review rests within the Court's discretion. *Zolin*, 491 U.S. at 572.

### III.    ANALYSIS

The Court conducted an *in-camera* review of the withheld materials pursuant to the standards set forth above. The Court reviewed 80 documents selected by the parties from Deloitte & Touche LLP's June 5, 2026 privilege log. To the extent any material is responsive to the Plaintiff's discovery Requests, the documents shall be produced consistent with Federal Rule of Civil Procedure 26(b)(1). For purposes of this review, the Court grouped the documents into the following categories: (1) documents protected by attorney-client privilege; (2) documents not protected by the attorney-client privilege; (3) documents designated as protected by the work product doctrine; and (4) documents designated by the Court.

### A. Attorney-Client Privilege

Pursuant to Deloitte & Touche LLP's June 5, 2026 privilege log, numerous documents that are responsive to Plaintiff's discovery Requests are protected from disclosure by the attorney-client privilege. Attorney-client privilege protects confidential communications between an attorney and its client for the purpose of obtaining legal assistance. *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 339 (4th Cir. 2005). The purpose of this longstanding privilege is to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege only applies if: (1) the one asserting the privilege is or sought to be a client; (2) there was communication with a person who is admitted to practice or his subordinate and the person was acting as a lawyer; (3) the communication relates to information in which the attorney was informed by his client without the presence of strangers, for the purpose of securing a legal opinion, services, or assistance with a legal proceeding not for the purpose of committing a crime or a tort, and (4) the privilege has been claimed and not waived by the client. *In Re Grand July Subpoena: Under Seal*, 415 F.3d 333 at 338.

The attorney-client privilege also protects a client's memorialization of privileged communications with their attorney and the gathering of "facts for the presentation to the lawyer for the purpose of obtaining legal advice." *Morrison v. Cnty. of Fairfax, Virginia*, 2014 WL 12527237, *1 (E.D.Va June 19, 2014). However, not all communications with an attorney are covered under this privilege. *Id.* For example, communications with an attorney that involve "merely transmitting a document without any substantive comment," is generally not protected by the attorney client privilege. *Id.*

1.  <u>Documents Protected by Attorney-Client Privilege</u>

In this case, the Defendant designated sixty-seven (67) documents on its privilege log as being protected by the attorney-client privilege. Upon review of each of these documents, the Court found forty-six (46) documents to be covered by the attorney-client privilege.[2] Material that fall within this category clearly depict the Defendant's confidential communications with their in-house counsel seeking legal advice or guidance. Based on the Court's review of the briefings on this matter, any communications between in-house counsel and Deloitte staff were held in private and have not been shared with third parties, indicating that the Defendant has not waived this privilege. Some documents in this category include specific directions from in-house counsel to Defendant's employees regarding the talent relations and audit investigations. Additionally, information or documents shared with legal counsel for the purpose of legal counsel being able to review such material to give the Defendant legal advice is also covered under the attorney client privilege. Accordingly, while such documents may be responsive to Plaintiff's discovery Requests, these documents depict confidential communications between in-house counsel for the purpose of legal assistance, thus protecting them from disclosure.

---

[2] This analysis applies to the documents that correspond with the following bates numbers or attachment numbers: DELOITTE_000531-532; DELOITTE_000 533-534; DELOITTE_000 553; DELOITTE_000 554-556; DELOITTE_000 557; DELOITTE_000 558-560; DELOITTE_000 561-564; DELOITTE_000 565; DELOITTE_000 566-567; DELOITTE_000 568; DELOITTE_000 569-570; DELOITTE_000 571-576; DELOITTE_000 583-586; DELOITTE_000 587-590; DELOITTE_000 765-771; FINE_LAUREN-00006895; DELOITTE_000 802-804; DELOITTE_000 806-809; FINE_LAUREN-00023661; FINE_LAUREN-00023663; FINE_LAUREN-00023723; FINE_LAUREN-00023798; FINE_LAUREN-00023806; FINE_LAUREN-00023832; FINE_LAUREN-00023833; FINE_LAUREN-00023859; FINE_LAUREN-00023861; FINE_LAUREN-00023863; FINE_LAUREN-00023885; FINE_LAUREN-00023888; FINE_LAUREN-00023889; FINE_LAUREN-00023890; FINE_LAUREN-00034092; FINE_LAUREN-00034156; FINE_LAUREN-00034175; DELOITTE_000976; FINE_LAUREN-00043130; FINE_LAUREN-00043149; FINE_LAUREN-00083949; FINE_LAUREN-00083988; MORTON_MICHAEL-00126941; MORTON_MICHAEL-00139504; MORTON_MICHAEL-00139506-139504; SCHOENWETTER_PATRICK-00475536; SCHOENWTTER_PATRICK-00475539; and TREIBER_JOHN_S-00172849.

2.   Documents Not Protected by Attorney-Client Privilege

The Court next identified a group of documents that are not covered by the attorney-client privilege. There are twenty-one (21) documents that fall into this category.[3] Based on the Court's review of these documents, it appears that the documents' privilege descriptions are inconsistent with the substance of the documents. The privilege description for these documents includes the correct current state of the law for what is covered by the attorney-client privilege, but the documents that were provided do not depict privileged material. For example, DELOITT_000542-545 is described as "internal communications sharing or requesting information to enable counsel to provide legal advice regarding the Talent Relations investigation." While the Defendant does correctly cite the rule that the attorney-client privilege also protects the information given to a lawyer to allow them to give informed legal advice, it is the underlying information that the lawyer is evaluating that is covered by the attorney-client privilege. *See In Re Allen*, 106 F.3d 582, 601 (4th Cir. 1997) (discussing how questionnaires and attorney-investigators' notes from interviews related to an internal investigation are protected by the attorney client privilege).

Here, the Defendant did not provide any "forensic findings" under DELOITT_000542-545. On the contrary, the material given is only an email exchange which does not state any facts for an attorney to consider or any legal advice that in-house counsel has given the Defendant. Other documents in this category consist of communications with in-house counsel in which the Defendant alleges that in-house counsel gave directions on collecting employee devices, saving

---

[3] This analysis applies to the documents that correspond with the following bates numbers or attachment numbers: DELOITTE_000503; DELOITTE_000535-536; DELOITTE_000542-545; DELOITTE_000552; FINE_LAUREN-00006759; FINE_LAUREN-00006789; FINE_LAUREN-00023630; FINE_LAUREN-00023632; FINE_LAUREN-00034004; FINE_LAUREN-00034144; FINE_LAUREN-00034161; FINE_LAUREN-00034190; FINE_LAUREN-00034200; FINE_LAUREN-00043110; FINE_LAUREN-00124646; FINE_LAUREN-00124652; FINE_LAUREN-00125111;    MORTON_MICHAEL-00126993;    MORTON_MICHAEL-00139496;    MORTON_MICHAEL-00139498; and MORTON_MICHAEL-00139500.

data, and locations for dropping off material. However, none of these email exchanges clearly depict how such information from in-house counsel is for the purpose of obtaining legal advice or services. There is no indication that the instructions of in-house counsel were for some business purpose or pursuant to company policy rather than for the purpose of obtaining legal advice. If done for non-legal bases, these documents would not be protected by the attorney-client privilege.

The Defendant frequently alleges that documents are protected by the attorney client privilege when the communication was done at the direction of in-house counsel or that there is fact finding involved pertaining to counsel's rendition of legal services. In making these arguments, Defendant consistently relies on *In Re Allen, Upjohn Co.*, and *Proa v. NRT Mid-Atlantic, Inc*. Upon review of these cases and applying the principles of the cases to the facts of this matter, the Court concludes that there are important distinguishing facts that impact the applicability of the attorney-client privilege here. In the cases cited by the Defendant, there were circumstances that showed legal counsel was sought to provide legal advice during the investigation. *See In Re Allen*, 106 F.3d 582 at 603-05; *Upjohn Co.*, 449 U.S. 383 at 394; *Proa v. NRT Mid–Atlantic, Inc.*, 2008 WL 11363286, *6 (D.Md. June 20, 2008). For example, in *Proa* the court found that an employee was an agent of an attorney when conducting an investigation into an employment discrimination claim because counsel directed staff to conduct the investigation after counsel received a demand letter from plaintiff's counsel. *Proa*, 2008 WL 11363286, *4, 6. The employee's communications during interviews for the investigation were protected under the attorney-client privilege because the court found that the investigation was for the sole purpose of assisting counsel in rendering legal services. *Id.*

*Proa* is analogous to the case before this Court because, while the Defendant alleges that the talent relations investigation was conducted at the direction of the attorney, there is no

8

indication that the talent relations investigation was done for the purpose of in-house counsel providing legal services, advice, or conclusions rather than simply providing advice regarding business operations. Considering the information contained in the two deputization memoranda that were submitted with the in-camera review, the initial investigation was about nepotism and ethical concerns, and in-house counsel did not state that the investigations were sought to gain information necessary to receive in-house counsel's legal advice. In the absence of facts that indicate that legal services were sought or needed, there is no evidence that indicates that the talent relations investigation was conducted for anything but purely business purposes or based upon internal policy, especially since there is nothing illegal about nepotism or whether the interactions between two of Defendant's employees met some ethical standard. Based upon the same reasoning, the material in this category also would not be protected by the work-product doctrine because email correspondence is not considered a document created by the attorney or its agent in anticipation of litigation. Therefore, each of the twenty-one (21) documents in this category are subject to disclosure.

### B. Work Product Doctrine

The work product doctrine protects an attorney's work completed in anticipation of litigation. *In re Grand Jury Proceedings, Thurs. Special Grand Jury Session Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir. 1994). The doctrine protects both opinion work product, the mental thoughts, impressions, conclusions, and legal theories of the attorney concerning the litigation, and fact work product, documents prepared by the attorney regarding the anticipated litigation. *Id.* While opinion work product is never discoverable, fact work product can be subject to disclosure if the requesting party can show a substantial need for the information and an inability to secure the requested information or the substantial equivalent of the requested information through other

means without undue hardship. *Id.* Material is considered to have been prepared "in anticipation of litigation" if it was made "because of an event or series of events that could reasonably lead to litigation, and if it would not have been prepared in a substantially similar form but for the prospective litigation." *Yorktowne Shopping Center, LLC v. National Sur. Corp.*, 2011 WL 1842720, \*1 (E.D.Va. May 16, 2011). The documents must be prepared in either "fairly foreseeable" or "substantial and imminent" threat of litigation. *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 542 (N.D.W.Va. Apr. 12, 2000).

While there is no clear-cut timeline for when a document is considered to be prepared in anticipation of litigation, courts evaluate each assertion on a case-by-case basis and considers the following factors: involvement of counsel; relationship between the parties; the nature of the documents; the time when the document was created; and any other facts specific to the underlying case. *Id*. However, documents that were "prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes" are not considered as "prepared in anticipation of litigation" and are therefore not protected by the work product doctrine. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992). Additionally, the "fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity." *Id.*

3.   Documents Designated as Protected by Work Product Doctrine

For the *in-camera* review, Defendant designated twelve (12) documents as being protected by the work product doctrine. Upon review of each of those documents, the Court finds that it has insufficient information from both parties in order to determine whether these documents are protected by the work product doctrine.[4] First, based on the Court's review of Defendant's

---

[4] This analysis applies to the documents that correspond with the following bates numbers or attachment numbers: DELOITTE_0000100;   DELOITTE_0000101;   FINE_LAUREN-00000170;   FINE_LAUREN-00000171;

privilege log and documents submitted with Plaintiff's Motion to Compel the Testimony of Deloitte & Touche LLP Deposition Witness Michael Morton [Dkt. No. 174] ("Motion to Compel Deposition"), it is unclear also when and why the Defendant actually reasonably anticipated litigation in order to assert the work product doctrine. Based on Defendant Deloitte & Touche LLP's Supplemental Notice in Response to the Court's Inquiry Related to its *In Camera* Review [Dkt. No. 168] ("Defendant's Supplemental Notice"), the Defendant stated that the talent relations investigation began on February 17, 2025, the audit investigation began on February 18, 2025, and that the Defendant anticipated litigation on February 20, 2025. Based on the Court's interpretation of the privilege log and the dates provided in Defendant's Supplemental Notice, the Court does not have sufficient information to support the conclusion that Defendant reasonably anticipated litigation on February 20, 2025.

With the facts currently in the Court's possession, the Court does not believe that Defendant could have reasonably anticipated litigation on February 20, 2025 because the two investigations were conducted just a few days prior. Defendant does not argue that these two investigations were conducted out of anticipation of litigation, rather that while conducting the investigations, "it became apparent that the investigation could result in disciplinary action . . . and Deloitte's Office of General Counsel ("OGC") reasonably anticipated litigation arising from or challenging any resulting disciplinary decisions." Supplemental Notice at 1–2. However, it is not clear what statements were made or conduct occurred during this timeframe for the Court to consider when determining if Deloitte's anticipation of litigation is reasonable under the current state of the law. Additionally, based on the Motion to Compel Deposition and the limited portion

---

FINE_LAUREN-00034134; FINE_LAUREN-00034135; FINE_LAUREN-000034162-34161; FINE_LAUREN-000083939; FINE_LAUREN-000083987; DELOITTE_0001029-1030; FINE_LAUREN-000034093; and FINE_LAUREN-00023660-23659.

11

of Michael Morton's first deposition testimony, Mr. Morton allegedly believed that there was no litigation pending at the time he was asked to get involved in the investigation. Mr. Morton's statements appear to support the Court's interpretation that it is less likely that the Defendant anticipated litigation on February 20, 2025. According to Defendant's privilege log, the termination hearings for Ms. Decanio and Mr. Wilson did not occur until March 10, 2025. The twelve documents that are designated as protected by the work product doctrine are all dated between February 20 and March 10, 2025. At the time these documents were either created or collected, no adverse employment action had been taken against either employee under investigation upon which the employees could base a lawsuit against Deloitte. Therefore, the Court does not believe that Deloitte could have reasonable anticipated litigation prior to either employee being informed about their termination.

The Court has noted that Plaintiff specifically argues that she has a substantial need for one of the documents designated as protected by the work product doctrine. This document is referenced as FINE_LAUREN-00034134-00034132 on the privilege log. Given that the Court requires additional information regarding what conduct or statements Defendant relied on and when to reasonably anticipate litigation, the Court cannot make a determination regarding Plaintiff's substantial need for this document. However, the Court does find that Plaintiff's argument for substantial need, which is included in her Notice Regarding the Parties' Meet and Confer on Plaintiff's Motion to Compel and Identification of Remaining Issues for Court Resolution [Dkt. No. 133], is insufficient because Plaintiff does not explain how the substance of the Teams Messages contained in FINE_LAUREN-00034134-00034132 helps prove a specific element(s) of the claim(s) she is asserting and whether or not the information contained in the document can be obtained from any other source, such as a third party, without undue hardship.

At this time, the Court deems it is most appropriate for both parties to supplement their filings regarding each of these twelve documents categorized under the work product doctrine consistent with this Order, so that the Court can make a proper determination regarding which documents are or are not privileged, and which documents Plaintiff has sufficiently shown that there is a substantial need and no reasonable means to access elsewhere.

    4.  <u>Documents Designated by the Court</u>

There were two documents provided for the *in-camera* review which the Defendant marked as protected by both the attorney-client privilege and the work product doctrine. Out of an abundance of caution, the Court reviewed both documents to determine whether the documents were privileged and what particular protection applied. The documents that fall into this category correspond with the following bates numbers on the privilege log: MORTON_MICHAEL-00139499-139498 and FINE_LAUREN-00023660-23659. While the Defendant indicated on the privilege log that both of these entries were protected by both privileges, the Court finds that the documents are only protected by the attorney-client privilege. First MORTON_MICHAEL-00139499-139498 is protected by the attorney-client privilege because it is a document that depicts instructions from the Defendant's general counsel regarding conducting the audit quality investigation. The instructions reflect general counsel's legal advice and direction, which Defendant's employees relied on when conducting the audit investigation. Such information is protected under the attorney-client privilege because counsel's instructions were given in response to Defendant's employees seeking general counsel's legal advice on how to conduct the audit investigation. The second document, FINE_LAUREN-00023660-23659, is also protected by the attorney-client privilege because Defendant's employees prepared the document for their counsel's review and at their counsel's direction, in connection with the audit quality investigation.

This document was created to provide the information requested for counsel to provide sound legal advice regarding the audit investigation. Therefore, both documents are protected by the attorney-client privilege and are protected from disclosure.

## IV.    CONCLUSION

For the reasons set forth above, the Plaintiff's Motion to Compel [Dkt. No. 111] is **GRANTED in part and DENIED in part.** Accordingly, it is hereby

ORDERED that, from the sample of documents analyzed in this Court's *in-camera* review, the Defendant is required to produce the following twenty-one (21) documents that correspond with the following line item numbers on the privilege log: DELOITTE_000503; DELOITTE_000535-536; DELOITTE_000542-545; DELOITTE_000552; FINE_LAUREN-00006759; FINE_LAUREN-00006789; FINE_LAUREN-00023630; FINE_LAUREN-00023632; FINE_LAUREN-00034004; FINE_LAUREN-00034144; FINE_LAUREN-00034161; FINE_LAUREN-00034190; FINE_LAUREN-00034200; FINE_LAUREN-00043110; FINE_LAUREN-00124646; FINE_LAUREN-00124652; FINE_LAUREN-00125111; MORTON_MICHAEL-00126993; MORTON_MICHAEL-00139496; MORTON_MICHAEL-00139498; and MORTON_MICHAEL-00139500.[5] Defendant shall also produce all other documents on the privilege log consistent with this Court's Order. Defendant is required to produce documents within 5 days from the date of the Order. It is further

---

[5] The undersigned found that the following document was listed on the June 5, 2026 privilege log, but the document itself was not included in the documents submitted for the *in-camera* review. The document corresponds with beginning bates number DELOITTE_000546 and ending bates number DELOITTE_000549. The Defendant may submit the document that corresponds with these bates numbers on their privilege log for the Court to properly review this additional document.

14

ORDERED that Plaintiff's Motion for Leave to File Supplemental Documents in Support of Motion to Compel Disclosure of Documents Wrongly Designated as Privileged or Work Product Against Defendant Deloitte & Touche LLP [Dkt. No. 150] is **GRANTED**. It is further

ORDERED that, no later than Tuesday, August 11, 2026, both parties shall file supplemental briefings regarding the twelve (12) documents designated as protected by the work product doctrine for the *in-camera* review. In Defendant's supplemental briefing, Defendant must clearly explain what statements by or conduct of Ms. Decanio, Mr. Wilson, Deloitte, or any third party, were reasonably relied upon by Deloitte in concluding that it anticipated litigation on February 20, 2025. Defendant shall indicate on what date those statements were made and/or conduct occurred. In Plaintiff's supplemental briefing, she is required to thoroughly explain what element(s) of her claim(s) the substance of the Teams Messages and other documents included on the privilege log help her prove and whether or not such information can be obtained from a third party, and if not, why not.

ENTERED this 7th day of August 2026.

_____/s/_____
Ivan D. Davis
United States Magistrate Judge

Alexandria, Virginia