**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(ALEXANDRIA DIVISION)**

| | |
|---|---|
| MELANIE DECANIO,<br><br>Plaintiff,<br><br>v.<br><br>DELOITTE & TOUCHE LLP and SCOTT WILSON<br><br>Defendants. | No.: 1:25-cv-01980-AJT-IDD |

# PLAINTIFF'S OPPOSITION TO DEFENDANT DELOITTE & TOUCHE LLP'S MOTION FOR SANCTIONS

John C. Cook, VSB # 38310
Cook Legal Solutions, PLLC
3975 University Drive, Suite 360
Fairfax, Virginia 22030
(T) 703-537-0023
(F) 571-520-9836
jcook@cooklegalsolutions.com

Richard M. Reice (pro hac vice)
Mari Bonthuis (pro hac vice)
Eric Small (pro hac vice)
Sterlington, PLLC
228 Park Avenue S #97956
New York, New York 10003
(212) 433-2853
richard.reice@sterlingtonlaw.com
mari.bonthuis@sterlingtonlaw.com
eric.small@sterlingtonlaw.com

*Attorneys for Plaintiff Melanie DeCanio*

# TABLE OF CONTENTS

INTRODUCTION ........................................ 1

FACTUAL BACKGROUND ........................................ 1

A. Plaintiff's Counsel Timely Served Dr. Greif's Expert Disclosures and Responded to Deloitte's Requests for Additional Materials. ........................................ 1

B. Counsel Further Investigated Whether Additional Materials Exist. ........................................ 3

C. When Additional Materials Were Discovered, DeCanio Promptly Reviewed and Produced Them. ........................................ 5

D. Deloitte Has Had the Additional Materials and an Opportunity to Address Them Through Expert Discovery. ........................................ 6

ARGUMENT ........................................ 6

A. Repeated Inquiries Concerning Additional Materials and Good-Faith Reliance on Representations Does Not Warrant Sanctions. ........................................ 7

B. Deloitte Has Not Suffered Prejudice That Warrants the Severe Sanctions It Seeks. ....... 10

C. Striking Plaintiff's Emotional-Distress Damages or Excluding Dr. Greif's Testimony Serves No Deterrent Purpose. ........................................ 12

D. Deloitte Has Not Established Entitlement to the Expenses Caused by the Delayed Production. ........................................ 14

CONCLUSION ........................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*,
155 F.3d 500 (4th Cir. 1998) .......... 9

*Brooks Sports, Inc. v. Anta (China) Co.*,
No. 1:17-cv-1458, 2018 WL 7488924 (E.D. Va. Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 969572 (E.D. Va. Jan. 11, 2019) .......... 9

*Flame S.A. v. Indus. Carriers, Inc.*,
39 F. Supp. 3d 752 (E.D. Va. 2014) .......... 13

*Gilmore v. Jones*,
No. 3:18-CV-00017, 2021 WL 5280970 (W.D. Va. Nov. 12, 2021) .......... 7

*Ins. Corp. of Ire. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) .......... 12

*MMI Prods., Inc. v. Long*,
231 F.R.D. 215 (D. Md. 2005) .......... 8, 14

*Plant v. Merrifield Town Ctr. Ltd. P'ship*,
711 F. Supp. 2d 576 (E.D. Va. 2010) .......... 9

*Power Home Solar v. Sigora Solar,*
339 F.R.D. 64 (W.D. Va. 2021) .......... 8, 10

*Rabb v. Amatex Corp.*,
769 F.2d 996 (4th Cir. 1985) .......... 7

*Samsung Elecs. Co. v. Nvidia Corp.*,
314 F.R.D. 190 (E.D. Va. 2016) .......... 11, 12

*Societe Internationale v. Rogers*,
357 U.S. 197, 212 (1958) .......... 7

*Stillman v. Edmund Sci. Co.*,
522 F.2d 798 (4th Cir. 1975) .......... 15

*Swimways Corp. v. Aqua-Leisure Indus., Inc.*,
2017 WL 3262135 (E.D. Va. July 31, 2017) .......... 15

*United States v. Shaffer Equip. Co.*,
11 F.3d 450 (4th Cir. 1993) .......... 9

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
269 F.R.D. 497 (D. Md. 2010), *aff'd in part, modified on other grounds*, No. CV MJG-06-2662, 2010 WL 11747756 (D. Md. Nov. 1, 2010) ............ 12, 13

*Wilson v. Volkswagen of Am., Inc.*,
561 F.2d 494 (4th Cir. 1977), *cert. denied*, 434 U.S. 1020 (1978) ............ 7, 10, 12, 13

**Statutes**

28 U.S.C. § 1927 ............ 9

**Rules**

Fed. R. Civ. P. 26(a)(2) ............ 2

Fed. R. Civ. P. 37(b)(2)(A) ............ 12

Fed. R. Civ. P. 37(b)(2)(C) ............ 14, 15

Plaintiff submits this Opposition Brief in response to Defendant Deloitte & Touche LLP's Motion and Memorandum of Law in Support of its Motion for Sanctions Arising from Plaintiff's Violation of the Court's July 30, 2026 Order and Related Discovery Misconduct (the "Motion"), ECF Nos. 253, 254.

## INTRODUCTION

Deloitte's Motion attempts to transform a discrete and remediable discovery issue into a basis for substantially dismantling Plaintiff Melanie DeCanio's case. Deloitte asks the Court to strike an entire category of damages or preclude Dr. Don Greif, Ph.D. ("Dr. Greif") from testifying – not because DeCanio concealed evidence or her counsel defied the Court, but because her counsel's diligent efforts failed to locate documents that Dr. Greif himself claimed did not exist. When that representation proved mistaken, counsel produced the additional materials. The consequence Deloitte seeks is therefore fundamentally disproportionate to the events at issue: a merits-based sanction for a discovery error that was corrected once Dr. Greif and counsel discovered it.

Deloitte's Motion also loses sight of what sanctions are intended to accomplish: to remedy prejudice and ensure compliance with discovery obligations, not to provide a litigation advantage untethered to the harm caused. Nothing about the delayed production requires striking DeCanio's emotional-distress damages or depriving the factfinder of Dr. Greif's testimony. Any legitimate prejudice flowing from the timing of the production can be addressed directly, without deciding substantive portions of DeCanio's case by sanction. Because Deloitte seeks relief far more severe than necessary to address the discovery issue before the Court, its Motion should be denied.

## FACTUAL BACKGROUND

### A. Plaintiff's Counsel Timely Served Dr. Greif's Expert Disclosures and Responded to Deloitte's Requests for Additional Materials.

Plaintiff retained Dr. Greif to conduct a forensic psychological evaluation of Ms. DeCanio and document the emotional-distress damages flowing from Mr. Wilson's assault and subsequent behavior, Deloitte's investigation into the assault, and Deloitte's subsequent retaliatory termination. Declaration of Richard Reice in Support of Plaintiff's Opposition to Deloitte & Touche's Motion for Sanctions ("Reice Decl.") ¶ 2. In early June 2026, Dr. Greif interviewed Ms. DeCanio and administered psychological testing, including the Minnesota Multiphasic Personality Inventory (MMPI-3) and the Clinical Administered PTSD Scale for DSM-5 (CAPS-5). *Id.* ¶ 3.

DeCanio served Dr. Greif's expert disclosures on Defendants on June 12, 2026, including (1) his qualifications; (2) a complete statement of his opinions and related facts and data; (3) a list of cases he served as an expert; and (4) the compensation he received as an expert in this litigation. *See* Fed. R. Civ. P. 26(a)(2). Two days later, on June 14, 2026, Deloitte requested additional materials relating to Dr. Greif's opinions: (1) notes or records from his June 2 and June 5 interview of Ms. DeCanio; (2) raw data, scoring materials, and interpretive materials associated with the psychological testing he administered; (3) Dr. Greif's full expert reports and testimony transcripts from the preceding four years; and (4) the identity of and psychological records of a prior therapist (referenced briefly in the Dr. Greif report) whom DeCanio saw for a short period of time in 2023. ECF No. 155-4 (collectively the "June 14 Requests"). In response, DeCanio's counsel contacted Dr. Greif to determine whether materials responsive to the June 14 Requests existed and provided Deloitte with everything that Dr. Greif shared on June 24, 2026: the MMPI-3 scoring report from DeCanio's evaluation, a CAPS-5 scoring sheet, and handwritten notes from Dr. Greif relating to the CAPS-5 evaluation. Reice Decl. ¶¶ 4–5. DeCanio's counsel objected to the June 14 Requests seeking Dr. Greif's expert reports and testimony transcripts as overbroad and beyond the scope of DeCanio's obligations under the Federal Rules, and provided an affidavit as to the 2023 psychological records of Ms. DeCanio's prior therapist, indicating that they could not be located.

ECF No. 158 at 2–3. Notwithstanding those efforts, on June 18, 2026 – before Plaintiff even had a chance to respond to the June 14 Requests[1] – Deloitte moved to extend the expert-discovery deadline based on alleged deficiencies in DeCanio's expert disclosures. Motion to Extend, ECF No. 155.

### B. Counsel Further Investigated Whether Additional Materials Exist.

On July 10, 2026, Deloitte filed its Motion to Extend the Deadline to Complete Depositions of Psychological Experts, asserting, among other things, that "several materials that form the basis of Dr. Greif's opinions and conclusions remain outstanding." ECF No. 169 at 5. Relying on Dr. Greif's assurances that he had provided all relevant documents, counsel for DeCanio reiterated that Dr. Greif had "provided the materials required in connection with Dr. Greif's expert report." ECF No. 187 at 2.

On July 30, 2026, the Court ordered DeCanio to produce, by August 5, 2026, the "notes and records from Dr. Greif's June 2 interview and June 5 telephone call with Plaintiff." ECF No. 196 (the "July 30 Order") at 1. In response to the Court's Order, DeCanio again sought responsive materials from Dr. Greif, emailing him on August 4, 2026, asking for "notes and records from your June 2 interview and June 5 call with Melanie." Declaration of Mari K. Bonthuis ("Bonthuis Decl.") ¶ 3 & Exhibit 1. On August 5, 2026, Dr. Greif emailed DeCanio's counsel three individual emails with scans of his handwritten notes that he recorded during his calls with Ms. DeCanio. Bonthuis Decl. ¶¶ 4–6 & Exhibits 2–4. Plaintiff's counsel reviewed what was provided to identify which pages contained Dr. Greif's notes and produced those documents on August 5, 2026: six pages of handwritten notes, four of which had previously been produced. Bonthuis Decl. ¶ 7.

---

[1] As Plaintiff's counsel explained to Deloitte's counsel on June 22, 2026, Dr. Greif was away when the June 14 Requests were received and were thus unable to provide the requested materials immediately. Reice Decl. ¶ 4.

On August 6, 2026, the parties met and conferred, and Deloitte claimed that Plaintiff still had not complied with the July 30 Order regarding Dr. Greif's notes. ECF No. 198 at 8. During the call that day, Plaintiff's counsel stated that one additional document from Dr. Greif would be produced that day and advised that, notwithstanding the multiple prior inquiries made to Dr. Greif, counsel would again ask Dr. Greif whether there were any other documents responsive to the July 30 Order in his possession. Bonthuis Decl. ¶ 10. That same day, Plaintiff's counsel emailed Dr. Greif to ask – again – whether there were any other records from his interview and call with DeCanio on June 2 and June 5, 2026. *Id.* at ¶ 10 & Exhibit 5 at 1. Dr. Greif had affirmed that "[t]here are no other notes from the 6/1 interview or the 6/5 call. Her CAPS-5 responses are in the notes I sent. I attached the TOMM scoring sheet." Bonthuis Decl., Exhibit 5 at 2. Dr. Greif then assured DeCanio's counsel that there was nothing else, but that he would nonetheless "take a look later to see if I left anything out." *Id.* One day later, on August 7, DeCanio's counsel spoke to Dr. Greif for approximately fifteen minutes about his notes and asked, at least twice, whether he had possession, custody, or control of any documents relating to his June conversations with DeCanio which had not provided to counsel. Dr. Greif responded that he did not. Bonthuis Decl. ¶ 12.

Deloitte filed a motion to compel on August 6, 2026, reiterating its request for Dr. Greif's June 2 and 5 notes. Dkt. No. 198 at 12. Based on the multiple emails and conversations Plaintiff's counsel had had with Dr. Greif, Plaintiff stated in her response that "Dr. Greif did subsequently provide additional handwritten notes and testing data relevant to his report that were requested by Deloitte" and that "there is nothing left to give." ECF No. 211 at 5 & nn.5, 6. At the August 14, 2026 hearing on Deloitte's motion to compel, Plaintiff's counsel likewise stated that they consulted "numerous times with Dr. Greif" and had been advised that "[t]here are no additional documents in his possession." ECF No. 254-2, Hr'g Tr. at 55:1–5. Counsel further explained:

> I can only ask him have you turned over everything, and he has said yes. And we have supplemented where we can supplement. I can't give them something that we don't have that he does not have .... I can only make that representation to the Court that in good faith we've asked him repeatedly ... but he does not have any.

*Id.* at 54:10–18 (emphasis added).

### C. <u>**When Additional Materials Were Discovered, DeCanio Promptly Reviewed and Produced Them.**</u>

Plaintiff's counsel <u>**only**</u> learned that Dr. Greif possessed additional documents on August 21, 2022, during Dr. Greif's deposition, when he stated that he had taken notes a few days earlier to prepare for his deposition and then pulled a folder out of his bag which apparently contained said notes. Reice Decl. ¶ 7. Given the efforts Plaintiff's counsel had gone to in order to collect all such notes, this revelation was stunning. *Id.* After the deposition, counsel asked Dr. Greif to provide these and any other notes, resulting in Dr. Greif emailing 40 pages of documents. After reviewing the documents sent by Dr. Greif and redacting those portions that were drafts of his report, Plaintiff produced the 40 pages on August 31, 2026 (the "August 31 Production"). Reice Decl. ¶ 8. Dr. Greif later apologized for not sending the notes earlier, recognizing that he understood what he "should've done," "regret[ted] not doing it," and was "sorry for the additional complexity and cost." Reice Decl., Exhibit 1 at 1.

Deloitte subsequently requested that Dr. Greif's deposition resume on September 24, 2026. ECF No. 254-3 at 8. After the parties met and conferred, on September 22, 2026, they agreed that Deloitte could depose Dr. Greif for an additional two hours by Zoom concerning the August 31 Production. *Id.* at 1–2. Plaintiff's counsel asked Dr. Greif for his availability during that week and promptly shared two potential dates and times with Deloitte's counsel. Reice Decl., Exhibit 1; ECF No. 254-3 at 1. Deloitte did not respond until after both dates had passed, though; when it did, it asked that the parties defer scheduling until after October 21, 2026. ECF No. 254-3 at 1. Ten days later, on October 12, 2026 – **one day before the filing deadline for Plaintiff's oppositions to**

**Defendant's summary judgment motions** – Deloitte reversed its position and demanded that Dr. Greif be made available for a supplemental deposition only four days later, on October 16, 2026. *Id.* Plaintiff declined to do so.

### D. Deloitte Has Had the Additional Materials and an Opportunity to Address Them Through Expert Discovery.

On July 3, 2026, Deloitte served DeCanio with its expert report written by Dr. Stephanie Wolf, Ph. D. *See* Motion at 5. In support of Deloitte's Motion to Extend Expert Deadlines, which was forced by the travel conflicts of Deloitte's own experts, Deloitte argued that Dr. Wolf required Dr. Greif's June notes "to adequately prepare her own clinical evaluation of Plaintiff (including an interview and administration of testing), compare Plaintiff's answers across testing experiences, and to complete a full, comprehensive report." ECF No. 163 at 4. In that report, Dr. Wolf specifically reserved her right to supplement her report should "additional, requested material become[] available for [her] review." Motion at 5. Thereafter, Dr. Wolf was independently unavailable to review any new documents nor interview Ms. DeCanio, due to preplanned travel for over two weeks in July. *See* ECF No. 155-1 ¶ 12. On September 4, 2026, Deloitte served Dr. Wolf's Supplemental Report, newly incorporating her review of recent documents, including: (1) deposition transcripts from Ms. DeCanio, Dr. Greif, Mr. Wilson; (2) additional therapy notes for Ms. DeCanio; (3) Dr. Greif's Rebuttal Report; and (4) Dr. Greif's notes from the August 31 Production. ECF No. 248-8 at 2.

## ARGUMENT

Upon a Rule 37(b) motion for sanctions, the Court must consider (1) whether the non-complying party acted in bad faith; (2) the amount of prejudice caused by noncompliance; (3) the need for deterrence of this kind of noncompliance; and (4) whether less drastic sanctions would be appropriate. *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503 (4th Cir. 1977) *cert. denied* 434

U.S. 1020, (1978). Deloitte fails to show bad faith requiring deterrence, does not identify irreparable prejudice, and seeks the severe sanctions of precluding Plaintiff's expert witness or striking a category of damages. Accordingly, Deloitte's motion must be denied.

### A. Repeated Inquiries Concerning Additional Materials and Good-Faith Reliance on Representations Does Not Warrant Sanctions.

While a court has discretion to impose sanctions under Rule 37(b), that discretion is not "without bounds or limits but one to be exercised discretely, and never 'when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of (the non-complying party).'" *Wilson*, 561 F.2d at 503, (emphasis added) (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958)). Bad faith is a party's "knowing disregard for its obligations to comply with court orders and/or the Federal Rules of Civil Procedure." *Gilmore v. Jones*, No. 3:18-CV-00017, 2021 WL 5280970, at *7 (W.D. Va. Nov. 12, 2021) (emphasis added) (citing *Rabb v. Amatex Corp.*, 769 F.2d 996, 999–1000 (4th Cir. 1985)).

DeCanio did not willfully disregard the Court's July 30 Order. Before representing to the Court and Deloitte that no additional responsive documents existed, counsel asked Dr. Greif – repeatedly – whether he possessed additional notes concerning his June interviews and Dr. Greif stated – repeatedly – that he had produced everything. Reice Decl. ¶ 4; Bonthuis Decl. ¶ 10 & Exhibits 1, 5. Counsel reasonably relied on those representations as explained to the Court. ECF No. 254-2, Aug. 14 Tr. at 55:1–18. When Dr. Greif's deposition showed those representations to be inaccurate, counsel promptly followed up with Dr. Greif, located the additional materials, and produced them. Reice Decl. ¶¶ 7–8. The later discovery of those documents shows only that counsel's prior understanding was mistaken, not that counsel knowingly withheld responsive materials or deliberately disobeyed the July 30 Order.

Sanctioning a litigant or her counsel for the deficient or erroneous actions of her expert is "highly undesirable" from a policy standpoint. *MMI Prods., Inc. v. Long*, 231 F.R.D. 215, 219 (D. Md. 2005) (analyzing sanctions pursuant to Rule 26(g)). There, although counsel incorporated an expert report containing inaccurate information into interrogatory responses, the court declined to impose monetary sanctions, noting that counsel's inaccurate representations were not part of a "nefarious plot to play unfairly in this litigation." *Id.* at 219–20. The same reasoning applies here. DeCanio's counsel did not intentionally withhold Dr. Greif's notes from Deloitte. To the contrary, Plaintiff's counsel repeatedly asked Dr. Greif in both phone calls and emails whether additional responsive documents existed and produced the documents that Dr. Greif provided. Bonthuis Decl. ¶¶ 10, 12 & Exhibits 1, 5; Reice Decl. ¶ 4. Counsel's representations that additional documents did not exist – which were made <u>after</u> these inquiries – were based on Dr. Greif's statements that he had no other documents. *See, e.g.,* Bonthuis Decl. ¶¶ 10, 12 & Exhibits 1, 5; Reice Decl. ¶ 4. Once Plaintiff's counsel learned that, notwithstanding these efforts, Dr. Greif did have additional documents, Plaintiff promptly produced them. Reice Decl. ¶¶ 7–8.

The case of *Power Home Solar v. Sigora Solar* underscores how far this case is from the misconduct necessary to establish bad faith. There, the court found bad faith after the plaintiff repeatedly failed to provide adequate written discovery, produced a Rule 30(b)(6) witness who was unprepared to testify on any of seventeen noticed topics, and demonstrated no meaningful effort to obtain information within its discovery obligations. 339 F.R.D. 64, 80–90 (W.D. Va. 2021). Even on those facts, the court declined the requested dismissal or default judgment, recognizing that the appropriate sanction must be "no more severe than is necessary" to remedy the prejudice caused by the violation. *Id.* at 74, 90–91.

Deloitte's authorities involve materially different conduct. In *Anderson v. Foundation for Advancement, Education & Employment of American Indians*, the sanctioned party had

"stonewalled on discovery from the inception of the lawsuit," repeatedly missed discovery deadlines, and engaged in "continued abuses." 155 F.3d 500, 504–05 (4th Cir. 1998). In *Brooks Sports, Inc. v. Anta (China) Co.*, the defendant failed to produce responsive documents within its possession, failed to promptly rectify its misconduct, and repeatedly submitted client declarations containing representations that were knowingly false when signed. No. 1:17-cv-1458, 2018 WL 7488924, at *13–14, 18 (E.D. Va. Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 969572 (E.D. Va. Jan. 11, 2019). In *United States v. Shaffer Equipment Co.*, counsel failed to correct a client's misrepresentations regarding his academic credentials, despite knowing that those representations were false when they were made, and that the client's credibility was material to the litigation. 11 F.3d 450, 455, 462 (4th Cir. 1993) (analyzing sanctions under the court's inherent powers pursuant to 28 U.S.C. § 1927). And in *Plant v. Merrifield Town Center Ltd. Partnership*, dismissal followed months of repeated, flagrant violations of multiple discovery orders which included materially false representations by counsel concerning the extent of discovery produced and continued noncompliance even after the court issued an express warning that dismissal could result. 711 F. Supp. 2d 576, 586–88 (E.D. Va. 2010).

Nothing comparable occurred here. Deloitte identifies no evidence that DeCanio or her counsel knew that the additional documents existed when counsel represented otherwise, intentionally withheld them, or disregarded information suggesting that Dr. Greif's representations were inaccurate. Moreover, Plaintiff has consistently fulfilled her discovery obligations in this case, responding to discovery requests and producing documents by the court-ordered deadlines. *See* ECF No. 61 at 2–3; ECF No. 158 at 1. An ultimately mistaken representation made after reasonable inquiry and corrected when contrary information comes to light is not bad faith, much less the type of willful and knowing misconduct necessary to justify the severe sanctions Deloitte seeks.

### B. Deloitte Has Not Suffered Prejudice That Warrants the Severe Sanctions It Seeks.

Under the Fourth Circuit's Rule 37 framework, the Court must consider the amount of prejudice the noncompliance caused the adversary before imposing sanctions. *See Wilson*, 561 F.2d at 504–05. The relevant inquiry is not whether Deloitte experienced any inconvenience from the delayed production, but whether the noncompliance caused prejudice warranting the particular sanctions requested. *Power Home Solar*, 339 F.R.D. at 74 ("The proper sanction must be no more severe than is necessary to prevent prejudice to the opposing party.") (internal quotation marks omitted) (citation omitted). Measured against that standard, none of the four categories of prejudice Deloitte identifies justifies striking DeCanio's emotional-distress damages or precluding Dr. Greif's testimony.

Deloitte contends that: (1) it "was required to bring multiple motions and repeatedly seek Court intervention to obtain discovery that the Court had ordered her to produce"; (2) it and its expert, Dr. Wolf, "were forced to prepare expert opinions and deposition examinations without documents that should have been produced weeks earlier"; (3) it "incurred substantial attorneys' fees and costs addressing discovery disputes that would not have been necessary had DeCanio complied with the July 30 Order"; and (4) it "proceeded with [Dr.] Greif's deposition in reliance on DeCanio's repeated assurances that no additional responsive documents existed," thereby losing the opportunity to examine him regarding those materials. Motion at 18–19. The first and the third, however, are merely ordinary litigation practice; there is no prejudice that exists preventing Deloitte from defending this action on the merits, and certainly no prejudice that supports excluding evidence or eliminating an entire category of damages. For the second, any prejudice Dr. Wolf experienced in preparing her report without Dr. Greif's notes has already been cured by Deloitte's own account. Dr. Wolf's Supplemental Report, served on September 4, 2026,

expressly incorporated her review of, among other things, "Greif Notes (DeCanio 001734-001773 (8/31/2026)." ECF No. 248-8 at 2. Having already obtained and used the obvious cure for this alleged prejudice, Deloitte cannot credibly claim the prejudice remains unremedied.

Finally, Deloitte's assertion that it lost the opportunity to question Dr. Greif about the withheld notes ignores that Plaintiff offered Deloitte exactly that opportunity. On September 22, 2026, the parties agreed that Deloitte could depose Dr. Greif for an additional two hours by Zoom concerning the August 31 Production, and Plaintiff's counsel promptly supplied two available dates. ECF No. 254-3 at 1–2; Reice Decl., Exhibit 1 at 1. Deloitte did not respond until after both dates had passed; when it did, it asked to defer scheduling until after October 21, 2026 — only to reverse course ten days later and demand, one day before Plaintiff's summary judgment opposition was due, that Dr. Greif sit for a supplemental deposition four days hence. ECF No. 254-3 at 1. Plaintiff declined. A party cannot manufacture the prejudice of a missed examination by declining the examination it was offered.

*Samsung Electronics v. Nvidia* is instructive. There, an expert failed to disclose materials underlying his opinions, depriving the opposing party of the opportunity to examine those materials during expert discovery. 314 F.R.D. 190, 195–200 (E.D. Va. 2016) (analyzing sanctions pursuant to Rule 37(c)). Although the court found that a discovery violation existed, it recognized that the nondisclosure was an "honest mistake" rather than bad faith and declined to impose the harsher sanction sought by the moving party. *Id.* The court instead fashioned relief designed to provide the opposing party sufficient time to analyze the newly produced materials and conduct additional expert discovery sufficient to cure the mistake discovered mid-trial. *Id.* at 200–03.

Deloitte's proposed sanctions bear little relationship to the alleged prejudice it identifies. As such, its Motion should be denied.

### C. Striking Plaintiff's Emotional-Distress Damages or Excluding Dr. Greif's Testimony Serves No Deterrent Purpose.

In addition to bad faith and prejudice, courts consider "the need for deterrence of the particular sort of non-compliance" and "whether less drastic sanctions would have been effective." *Wilson*, 561 F.2d at 503–05. Those considerations are particularly important where, as here, the requested sanction would substantially impair a party's ability to present her claims on the merits. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 527, 533–35 (D. Md. 2010), *aff'd in part and modified on other grounds*, No. CV MJG-06-2662, 2010 WL 11747756 (D. Md. Nov. 1, 2010) (recognizing that "dispositive sanctions . . . are only appropriate where lesser sanctions will not suffice" and that courts must "impose the least harsh sanction that can provide an adequate remedy"). Moreover, Rule 37 independently requires that any sanction be "just" and "specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ire. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (citing Fed. R. Civ. P. 37(b)(2)(A)) (affirming grant of sanctions where party displayed an "obvious disregard" of the court's orders by refusing to produce evidence).

The deterrence factor does not support striking damages or excluding Dr. Greif's testimony. Those sanctions would serve little deterrent purpose where the record does not establish deliberate withholding and counsel produced the additional materials after learning of them. Reice Decl. ¶¶ 7–8. The Court may account for the circumstances of the violation when selecting a remedy, including counsel's prior inquiries, the source of the inaccurate information, and the corrective measures taken after the deficiency was discovered. *Samsung*, 314 F.R.D. at 201 (noting that when formulating an appropriate sanction to deter misconduct, the Court "must also take into account all circumstances of the infraction").

*Victor Stanley* illustrates the disproportionality of Deloitte's request. In *Victor*, despite finding years of intentional destruction of evidence, repeated violations of court orders, and bad-faith misrepresentations, the court declined to impose default on claims for which the movant failed to demonstrate "irreparable or substantial prejudice." 269 F.R.D. at 538–39. In comparison, the court in *Flame S.A. v. Industrial Carriers, Inc.* upheld a heighted sanction order and required the offending party and its counsel to pay attorneys' fees and expenses only after repeated violations of discovery orders and a prior Rule 37 monetary sanction failed to deter noncompliance. 39 F.Supp.3d 752, 765 (E.D. Va. 2014). Unlike *Victor Stanley* and *Flame S.A.*, Deloitte cannot point to any pattern of discovery obstruction by Plaintiff. The additional materials were produced once discovered, and Deloitte has been provided an opportunity to further examine Dr. Greif regarding them. *See* Reice Decl. ¶ 8; ECF No. 248-8 at 2. Thus, even assuming some sanction or remedial measure was warranted, far less drastic alternatives exist to remedy any alleged prejudice.

Deloitte's contention that lesser measures have "already proven ineffective" does not alter the analysis. Motion at 21. Prior efforts to secure production were directed toward locating documents that DeCanio's counsel understood, based on repeated inquiries to Dr. Greif and his repeated representations that they did not exist. After providing the documents in the August 31 Production, Deloitte's expert reviewed those materials and supplemented her opinions. *See* ECF No. 248-8 at 2. Under these circumstances, Deloitte cannot establish that lesser measures have proven ineffective, much less that the severe sanctions it seeks are necessary to remedy any remaining prejudice. *See Wilson*, 561 F.2d at 503–04 (recognizing that "the exercise of the [Rule 37(b)] power should be confined to the 'flagrant case[s]'"). Deloitte received the materials in time for Dr. Wolf to consider them, along with other new documents, in her supplemental report, which

was delayed independently because Dr. Wolf's schedule prevented her from interviewing Ms. DeCanio sooner. *See* ECF No. 155-1 ¶ 12; ECF No. 248-8 at 2..

Accordingly, neither striking DeCanio's emotional-distress damages nor excluding Dr. Greif is necessary to place Deloitte in the position it would have occupied had the documents been produced earlier. Those sanctions instead would provide Deloitte a merits-based litigation advantage wholly disproportionate to the discovery issue they ostensibly seek to remedy. Rule 37 does not require, or permit, such a result.

**D. Deloitte Has Not Established Entitlement to the Expenses Caused by the Delayed Production.**

Deloitte's request for attorneys' fees and expenses should likewise be denied. Rule 37(b)(2)(C) provides that, following a violation of a discovery order, the Court ordinarily must require the disobedient party, its attorney, or both to pay the reasonable expenses caused by the failure, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Here, the circumstances underlying the delayed production substantially justify DeCanio's conduct and, at minimum, render a fee award unjust. DeCanio's counsel did not knowingly possess responsive documents and refuse to produce them. To the contrary, counsel repeatedly sought confirmation from Dr. Greif regarding whether additional responsive materials existed and was repeatedly told that no such documents existed. Bonthuis Decl. ¶¶ 10, 12 & Exhibits 1, 5; Reice Decl. ¶ 4. When counsel became aware of such documents, they were immediately produced. Reice Decl. ¶¶ 7–8. An expert's inaccurate assurance that all responsive materials have been identified does not, without more, justify shifting expenses to counsel who reasonably relied on that assurance and corrected the deficiency once it became known. *MMI Prods.*, 231 F.R.D. at 219–20. The record here bears little resemblance to the intentional obstruction or unjustified

refusal to provide discovery for which expense shifting is intended. *See, e.g., Swimways Corp. v. Aqua-Leisure Indus., Inc.*, 2017 WL 3262135, at *3 (E.D. Va. July 31, 2017) (granting attorneys' fees where defendant failed to produce documents by court-ordered deadline and only produced substantive documents two months later on the eve of a deposition).

Moreover, Rule 37(b)(2)(C) permits recovery only of reasonable expenses "caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). To the extent Deloitte seeks fees, it bears the burden of establishing that the particular expenses requested were reasonable and actually caused by the alleged noncompliance, rather than ordinary discovery, motion practice, or disputes that would have occurred regardless of the August 31 Production.[2] *See Stillman v. Edmund Sci. Co.*, 522 F.2d 798, 801 (4th Cir. 1975) (remanding fee award for findings identifying the actual fees and costs caused by the Rule 37 violation, because "no assessment may be made for expenses which were incurred independent of that process"). Deloitte cannot simply attribute every expense incurred in connection with the broader expert discovery disputes to the late production of these particular documents. *See* Motion at 18–19, 21; ECF No. 254-5 at 1.

Accordingly, the Court should deny Deloitte's request for expenses as unwarranted and unjust. Alternatively, any award must be limited to reasonable expenses Deloitte proves were directly caused by the delayed production, excluding ordinary expert discovery, unrelated motion practice, and costs that would have been incurred regardless.

## **CONCLUSION**

Rule 37 is not a vehicle for imposing punitive relief untethered to actual prejudice and bad faith conduct. Nothing about the challenged production justifies the issuance of any sanction, and

[2] In an email sent to Deloitte on October 26, 2026, Plaintiff noted that Deloitte had failed to "specify the amount of fees [they] sought or the specific scope or aspects of motions . . . for which [Deloitte] may seek fees."

certainly not the extraordinary remedy of striking DeCanio's emotional-distress damages claim or precluding Dr. Greif's testimony. Deloitte has not and cannot show Plaintiff willfully disobeyed the Court's July 30 Order. Nor can Deloitte show it suffered incurable prejudice through the production of 39 pages of documents after Dr. Greif's deposition, without a concrete showing that those documents materially compromised its examination. For the foregoing reasons, Deloitte's requested sanctions are both unsupported and disproportionate, and its motion should be denied in its entirety.

Dated: New York, New York
November 12, 2026

Respectfully submitted,

By: /s/ John C. Cook

John C. Cook, VSB # 38310
Cook Legal Solutions, PLLC
3975 University Drive, Suite 360
Fairfax, Virginia 22030
(T) 703-537-0023
(F) 571-520-9836
jcook@cooklegalsolutions.com

Richard M. Reice (pro hac vice)
Mari Bonthuis (pro hac vice)
Eric Small (pro hac vice)
Sterlington, PLLC
228 Park Avenue S #97956
New York, New York 10003
(212) 433-2853
(212) 433-2831
richard.reice@sterlingtonlaw.com
mari.bonthuis@sterlingtonlaw.com
eric.small@sterlingtonlaw.com

*Attorneys for Plaintiff Melanie DeCanio*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of November 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: /s/ John C. Cook
John C. Cook, VSB # 38310