**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| MELANIE DECANIO, *Plaintiff*, - v - DELOITTE & TOUCHE LLP, and SCOTT WILSON, *Defendants*. | Case No.: 1:25-cv-01980-AJT-IDD |

# DEFENDANT DELOITTE & TOUCHE LLP'S MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF DON GREIF, PH.D.

**EPSTEIN BECKER & GREEN, P.C.**
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037-1175
*Attorneys for Defendant*
*Deloitte & Touche LLP*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT BACKGROUND ...................................................................................... 1

LEGAL STANDARD .................................................................................................... 5

ARGUMENT ................................................................................................................ 6

I. GREIF'S FINDINGS AND OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE NOT RELEVANT. ........................................................................................ 6

II. GREIF'S FINDINGS AND OPINIONS SHOULD BE EXCLUDED BECAUSE HIS PRINCIPLES AND METHODS ARE NOT RELIABLE. ........................................ 8

A. Greif's Diagnoses Are the Result of a Deeply Flawed Methodology. ............................ 9

B. Greif Did Not Conduct a Differential Diagnosis to Form a Reliable Opinion on PTSD Causation. ........................................................................................................ 13

C. Greif Relied Primarily on DeCanio's Self-Report of What Caused Her Symptoms. ....... 15

III. GREIF'S FINDINGS AND OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE NOT RELIABLY BASED ON SUFFICIENT FACTS OR DATA UNDER RULE 702(b). ...................................................................................................... 17

A. Greif Diagnosed DeCanio With PTSD and Unspecified Depressive Disorder Without Reviewing Her Pre-Existing Mental Health Records. ........................................ 17

B. Greif Failed to Obtain Critical Facts Related to DeCanio's History of Trauma. ............. 19

IV. GREIF'S OPINIONS DO NOT SATISFY RULE 702(a) BECAUSE THEY ARE NOT HELPFUL TO THE TRIER OF FACT AND USURP THE ROLE OF THE FACTFINDER. ........................................................................................ 20

CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Belville v. Ford Motor Co.*,
919 F.3d 224 (4th Cir. 2019) ....................11

*Cooper v. Smith & Nephew, Inc.*,
259 F.3d 194 (4th Cir. 2001) ....................14

*Daubert v. Merrell Dow Pharmaceuticals Inc.*,
509 U.S. 579 (1993).................... *passim*

*Doe v. Ortho-Clinical Diagnostics, Inc.*,
440 F.Supp.2d 465 (M.D.N.C. 2006) ....................14

*E.E.O.C. v. Freeman*,
778 F.3d 463 (4th Cir. 2015) (Agee, J., concurring) ....................16

*EcoFactor, Inc. v. Google LLC*,
137 F.4th 1333 (Fed. Cir. 2025) ....................5

*ePlus, Inc. v. Lawson Software, Inc.*,
764 F.Supp.2d 807 (E.D. Va. 2011), *aff'd*, 700 F.3d 509 (Fed. Cir. 2012)....................9

*Fitzgerald v. Smith & Nephew, Inc.*,
11 F. App'x 335 (4th Cir. 2001) ....................17

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997)....................8, 9

*Holmes v. Wing Enters., Inc.*,
No. 1:08–cv–822, 2009 WL 1809985 (E.D. Va. June 23, 2009)....................6

*In re Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.*,
892 F.3d 624 (4th Cir. 2018) ....................5

*Oglesby v. General Motors Corp.*,
190 F.3d 244 (4th Cir. 1999) ....................8

*Payne v. Wyeth Pharms., Inc.*,
No. 2:08cv119, 2008 WL 5586824 (E.D. Va. Nov. 17, 2008)....................14

*Perkins v. United States*,
626 F.Supp.2d 587 (E.D. Va. 2009) ....................12, 15

*Plantan v. Smith*,
No. 3:22cv407, 2024 WL 3048648 (E.D. Va. June 18, 2024)....12

*Price v. White*,
No. 5:23-cv-00010, 2025 WL 2665322 (W.D. Va. Sept. 17, 2025)....18

*Roche v. Lincoln Prop. Co.*,
278 F.Supp.2d 744 (E.D. Va. 2003) ....13

*Sardis v. Overhead Door Corp.*,
10 F.4th 268 (4th Cir. 2021) ....6

*Silicon Knights, Inc. v. Epic Games, Inc.*,
No. 5:07–CV–275–D, 2011 WL 6748518 (E.D.N.C. Dec. 22, 2011)....16

*Slaby v. Holder*,
No. 1:12-cv-1235, 2013 WL 12147698 (E.D. Va. July 24, 2013)....9, 15, 21

*Small v. WellDyne, Inc.*,
927 F.3d 169 (4th Cir. 2019) ....8

*Snell v. Reid*,
No. 22-1869, 2024 WL 2815061 (4th Cir. June 3, 2024) (per curiam) ....5, 6

*Spencer v. General Electric Co.*,
688 F.Supp.1072 (E.D. Va. 1988) ....21

*Tyger Const. Co. Inc. v. Pensacola Const. Co.*,
29 F.3d 137 (4th Cir. 1994) ....18

*U.S. v. Forrest*,
429 F.3d 73 (4th Cir. 2005) ....5

*United States v. Smith*,
919 F.3d 825 (4th Cir. 2019) ....6

*Westberry v. Gislaved Gummi AB*,
178 F.3d 257 (4th Cir. 1999) ....20

*Wood v. Credit One Bank*,
277 F.Supp.3d 821 (E.D. Va. 2017) ....8

*Zellars v. NexTech Ne., LLC*,
895 F.Supp.2d 734 (E.D. Va. 2012), *aff'd* (July 17, 2013)....13

*Zuckerman v. Wal-Mart Stores E., L.P.*,
611 F. App'x 138 (4th Cir. 2015) ....6



**Error! Unknown document property name.**

**Other Authorities**

Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* § F43.10 (5th Ed., text rev. 2022) .......... 4, 7, 10

APA Guidelines 9.01, *available at* https://ap-ls.org/resources/guidelines/methods .......... 14, 20

APA Guidelines 9.02, *available at* https://www.apa.org/practice/guidelines/forensic-psychology; .......... 12, 15

APA Guidelines 10.2, *available at* https://ap-ls.org/resources/guidelines/assessment; .......... 19

APA Specialty Guidelines for Forensic Psychology 2.05 (2011), *available at* https://ap-ls.org/resources/guidelines/competence .......... 12

Fed. R. Civ. Proc. 37(b)(2) .......... 1

Fed. R. Civ. Proc. 37(b)(2)(C) .......... 1

Fed. R. Evid. 403 .......... 10, 20

Fed. R. Evid. 702 .......... *passim*

Fed. R. Evid. 702 advisory committee note to 2000 amendments .......... 13

Fed. R. Evid. 702(a) .......... 7, 20

Fed. R. Evid. 702(b) .......... 17

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), Defendant Deloitte & Touche LLP ("Deloitte") respectfully moves this Court to exclude the expert testimony of Don Greif, Ph.D. ("Greif"), the emotional distress damages expert of Plaintiff Melanie DeCanio ("DeCanio"), on the grounds that his proffered opinion fails to satisfy Rule 702's admissibility requirement.[1]

DeCanio has designated Greif, a clinical psychologist, to testify at trial on her behalf. Greif's opinions, however, fail to meet Federal Rule of Evidence 702's and *Daubert's* requirements for admissibility. His opinions are irrelevant and unreliable, and lack the requisite methodological foundation required under *Daubert*, particularly given the Court's dismissal of DeCanio's hostile work environment claims against Deloitte. (*See* Mem. Op. & Ord., Dkt. No. 259). Because Greif's opinions fail to meet the rigorous standards for admissibility under Federal Rule of Evidence 702 and *Daubert*, his testimony should be excluded.

## RELEVANT BACKGROUND

DeCanio offers Greif to provide testimony in support of her claim that she suffered emotional distress because of an alleged "sexual assault" by defendant Scott Wilson ("Wilson") in May 2024, combined with Deloitte's Talent Relations and Quality Assurance/Risk Investigations

---

[1] Deloitte separately moved for sanctions under Federal Rule of Civil Procedure 37(b)(2) arising from DeCanio's failure to comply with the Court's July 30, 2026 Order, which required production of Greif's notes and records from his June 2 interview and June 5 telephone call. (*See* Def. Deloitte & Touche LLP's Mem. of Law in Supp. of Mot. for Sanctions, Dkt. No. 254). DeCanio's counsel represented at the August 14, 2026 hearing that no additional responsive documents existed; 39 pages of Greif's notes were produced only on August 31, 2026, after Greif's deposition. Deloitte has asked the Court to strike DeCanio's claim for emotional distress damages; alternatively, it has asked the Court to preclude Greif from testifying at trial. Deloitte also seeks fees and expenses under Rule 37(b)(2)(C). The motion remains pending. Deloitte made the same request for relief in an earlier Motion to Compel. (*See* Dkt. No. 198).

in February 2025, and the March 10, 2025 termination of her employment. (*See* Glasser Decl. Ex. A ("Report")). Greif opines that DeCanio suffers from two disorders identified in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5-TR"): (1) Post Traumatic Stress Disorder ("PTSD") and (2) Unspecified Depressive Disorder ("UDD"). He further opines that DeCanio's clinical symptoms were caused by Wilson's alleged assault, and that Deloitte's investigation and termination of DeCanio's employment led to "damage to Ms. DeCanio's emotional health and functioning" that was "extensive and long-lasting." (Report at 18).

Greif concedes, however, that his finding of PTSD was predicated on Wilson's alleged assault. (Greif Dep. 109:19-22). He could not opine or conclude that the termination of DeCanio's employment *alone* caused her "PTSD." (*Id.* 109:9-114:5). Given the dismissal of DeCanio's hostile work environment claims against Deloitte, which was largely based on Wilson's alleged assault, Greif's PTSD diagnosis, which relies on the occurrence of that alleged assault, has no probative value. Greif cannot demonstrate the requisite causality to the termination of DeCanio's employment, and thus his PTSD diagnosis is irrelevant to the remaining retaliation claims against Deloitte.[2]

Greif's opinions are also the flawed product of an unreliable methodology: they depend on non-scientific theories and insufficient facts and data given DeCanio's relevant history. Greif's conclusions rest on an evaluation of DeCanio that sharply deviates from the generally accepted standards of forensic psychological practice. Greif reviewed a handful of documents before drafting his Report, namely DeCanio's Complaint, notes from one of DeCanio's former therapists, Julie Fender ("Fender"), and a selection of Teams messages and text messages between DeCanio

[2] There is a remaining battery claim against defendant Wilson. Deloitte has filed a motion seeking separate trials on the battery claim against Wilson and retaliation claims against Deloitte.

and Wilson curated by DeCanio's counsel. (Report at 1-2). Greif did not to review several other documents prior to making his diagnosis, including treatment notes from DeCanio's other therapist, Antoinette Coleman ("Coleman"), who treated DeCanio more than a year before the events alleged in this action. (Greif Dep. 78:5-17; 80:10-81:9).[3] Nor did Greif review DeCanio's deposition testimony before authoring his opinions. (*Id.* 89:12-90:5).

Greif largely devotes the Report to recounting the alleged assault, only briefly touching on the termination of DeCanio's employment. While Greif claimed to have questioned DeCanio extensively about the alleged assault, he failed to ask questions about any other recent or contemporaneous stressors in her life at the time, including other traumatic events, deaths of anyone close to her, or DeCanio's medical or mental health history. (*Id.* 222:6-15).

Greif states that Ms. DeCanio "met all the criteria for PTSD" and attributes that diagnosis to a combination of events: Wilson's alleged assault, Deloitte's investigation, and Deloitte's treatment of her after she reported the alleged assault. (Report at 15-17). Greif testified that "it was the combination of all of these events that triggered her PTSD" and that he was "looking at everything as a composite." (Greif Dep. 109:9-22). But he also conceded that termination alone "[m]ost likely [would] not" have triggered PTSD, and that he could not say the investigation standing alone could have done so either. (*Id.* 110:15-18, 113:21-114:5). Because Criterion A is required for PTSD and neither the investigation nor the termination satisfies it, Greif's PTSD

---

[3] Greif met with DeCanio once in person, during which he interviewed her for approximately two hours and forty-five minutes before administering approximately two hours and forty-five minutes of psychological tests. (*See* Glasser Decl. Ex. B ("Greif Dep.") 82:51-83:12). Greif subsequently spoke to DeCanio twice, once for thirty minutes and once for an unknown period and exchanged a handful of emails with her. (*Id.* 14:11-13).

diagnosis depends on conduct that cannot support liability against Deloitte. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* § F43.10 (5th Ed., text rev. 2022). As recounted in his Report, Greif administered two tests: the Minnesota Multiphasic Personality Inventory-3 ("MMPI-3"), a personality test, and the Test of Memory Malingering ("TOMM"), a test used to detect intentional exaggeration or simulation of memory deficits. (Report at 12). Greif admits that he never recorded DeCanio's scores on the TOMM before writing his report. (Greif Dep. 22:20-23:2). Additionally, while Greif administered some portion of the CAPS-5 Clinician Administered Post Traumatic Stress Disorder Scale for DSM-5-TR ("CAPS-5"), he admitted that he failed to administer the Life Events Checklist (the "Checklist"), a key component of CAPS-5, which is designed to elicit information about past traumatic events. (*Id.* 25:3-4, 71:14-18). Further, Greif admitted that Fender, DeCanio's treating therapist, did not diagnose DeCanio with PTSD at or around the time of the events at issue—or even in the months that followed. (*Id.* 191:2-8).

Deloitte retained Stephanie Wolf, J.D., Ph.D. ("Wolf"), to prepare a report analyzing Greif's opinions. (*See* Glasser Decl. Ex. C ("Wolf Report")). In her report, Wolf opined that Greif's diagnosis of PTSD lacked support in the available data for several reasons, including that the conduct at issue in the alleged assault—Wilson's attempt to kiss DeCanio—did not meet the criteria for sexual violence in the DSM-5-TR. (*Id.* at 15). In response, Greif prepared a rebuttal report challenging Wolf's conclusion by referring to a blog post about sexual violence appearing on the website of a personal injury law firm. (*See* Glasser Decl. Ex. D ("Greif Rebuttal") at 7; *see also* Glasser Decl. Ex. E ("Denver Trial Lawyers Blog Post")).[4] Greif failed to cite any

[4] As referenced herein, Greif has used the terms "sexual violence" and "sexual assault" interchangeably, and without a clear definition that meets Rule 702 standards. Regardless of how

scientifically valid, peer-reviewed or widely accepted studies or diagnostic manuals to support his conclusion that Wilson's attempted kissing of DeCanio and alleged touching of her thigh—as she described the incident to Greif—qualified as sexual violence under the DSM-5-TR.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides that expert testimony is admissible only when (a) the expert's specialized knowledge will help the trier of fact; (b) the testimony is "based on sufficient facts or data"; (c) is "the product of reliable principles and methods"; and (d) the expert reliably applied those principles and methods to the case facts. *In re Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.*, 892 F.3d 624, 631 (4th Cir. 2018) (quoting Fed. R. Evid. 702). "[T]he proponent of expert testimony bears the burden of establishing its admissibility and to emphasize that an expert's opinion must stay within the bounds of a reliable application of the expert's basis and methodology." *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1339 (Fed. Cir. 2025); *see* Fed. R. Evid. 702 advisory committee note to 2023 amendment.

Under Rule 702, a trial judge may not admit expert scientific testimony unless that testimony is both relevant and reliable. *See Daubert*, 509 U.S. at 580, 589-90 (1993) (the court must determine whether the evidence "both rests on a reliable foundation and is relevant to the task at hand"). The requirements of Rule 702 and *Daubert* are distilled into three crucial inquiries: (1) whether the proposed expert witness is qualified; (2) whether the proposed testimony is relevant; and (3) whether the proposed testimony is reliable. *See id.* at 588-589; *U.S. v. Forrest*, 429 F.3d 73, 80 (4th Cir. 2005). The court must "satisfy itself that the proffered testimony meets the relevant standard as a precondition to admissibility." *Snell v. Reid*, No. 22-1869, 2024 WL

Greif has used the terms, they should not be conflated with battery, which has a distinct legal definition.

2815061, at *3 (4th Cir. June 3, 2024) (per curiam) (citation modified); *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 282 (4th Cir. 2021).

The court serves as a "gatekeeper," ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Holmes v. Wing Enters., Inc.*, No. 1:08–cv–822, 2009 WL 1809985, at *2 (E.D. Va. June 23, 2009); *see also United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019). Importantly, courts must make explicit findings concerning the challenged preconditions of admissibility either by written order or orally on the record. *See Snell*, 2024 WL 2815061 at *3; *Sardis*, 10 F.4th at 283. "Expert testimony rooted in subjective belief or unsupported speculation does not suffice." *Zuckerman v. Wal-Mart Stores E., L.P.*, 611 F. App'x 138, 138 (4th Cir. 2015) (citation modified).

## <u>ARGUMENT</u>

### I. GREIF'S FINDINGS AND OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE NOT RELEVANT.

Greif's opinions fail to meet *Daubert*'s basic relevancy test. *See Daubert*, 509 U.S. at 589-90 (1993). This court has dismissed DeCanio's hostile work environment claims, which were based, in large part, on the alleged assault occurring in May 2024. DeCanio's remaining claims against Deloitte are for retaliation based on the termination of her employment on March 10, 2025. Greif's PTSD and UDD opinions rely on the premise that an alleged "sexual assault" or "sexual violence" occurred, which is of limited relevance to the retaliation claims—the sole claims remaining against Deloitte.

Moreover, Greif cannot establish the requisite causality to formulate a relevant opinion concerning the termination as the cause of DeCanio's "PTSD":

> Q: So it's your opinion today that the termination of Ms. DeCanio's employment triggered PTSD?

> A: No. What I'm saying is it was the combination of all of these events that triggered her PTSD.
>
> Q: So it wasn't the alleged assault alone that triggered it?
>
> A: It might have been. I was looking at everything as a composite.
>
> Q: Can you say whether or not the alleged assault standing alone triggered her claimed PTSD?
>
> A: I believe it did.

(Greif Dep. 109:9-22).

Greif's opinion that the termination of her employment caused DeCanio's PTSD (or UDD) is not supported by the record.[5] The first criterion for diagnosing PTSD is determining that the person was exposed to actual or threatened death, serious injury, or sexual violence. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* § F43.10. Termination of an individual's employment does not suffice as a criterion required for a PTSD diagnosis. *Id.* Accordingly, Greif could not conclusively opine that DeCanio's termination caused her "PTSD"—in stark contrast to his opinion that the alleged assault caused her "PTSD." (Greif Dep. 110:15-18). His opinion thus fails to meet the *Daubert* relevancy test and cannot meet Rule 702's rigorous standards. *See* Fed. R. Evid. 702(a) (requiring an expert to help the trier of fact understand the evidence or "determine a fact in issue").

---

[5] Greif does not conclude that Deloitte's termination of DeCanio's employment caused her PTSD and UDD. He states that she experienced clinical symptoms of UDD "after she was sexually assaulted and when Deloitte was investigating the assault (5/29/24-3/10/25)" (Report at 17), but he does not connect those symptoms to the termination. He also testified that Deloitte's investigation "exacerbated" DeCanio's PTSD symptoms (Greif Dep. 110:1-6), but that opinion does not address the termination on which the remaining retaliation claims rest. Even if it did, Greif could not say that the investigation, standing alone, could have triggered PTSD (*id.* 113:21-114:5), and he did not separate the investigation's effect from the alleged assault—only that the symptoms occurred *during* the investigation. (*Id.* 109:9-22). The opinion gives the jury no reliable basis to attribute any injury to the investigation.

## II. GREIF'S FINDINGS AND OPINIONS SHOULD BE EXCLUDED BECAUSE HIS PRINCIPLES AND METHODS ARE NOT RELIABLE.

*Daubert* and Rule 702 do not permit "a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 137 (1997); *see also Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir. 2019) ("Without testing, supporting literature in the pertinent field, peer reviewed publications[,] or some basis to assess the level of reliability, expert opinion testimony can easily, but improperly, devolve into nothing more than proclaiming an opinion is true 'because I say so.'"). An opinion "must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). Expert testimony that is not based on sound methodology is not sufficiently reliable and is properly excluded. *See Wood v. Credit One Bank*, 277 F.Supp.3d 821, 859 (E.D. Va. 2017). Here, Greif's PTSD and UDD opinions are not the product of reliable principles and methods, for three independent reasons.

*First*, Greif did not arrive at his diagnoses of PTSD and UDD in a methodologically sound manner. Pursuant to the DSM-5-TR, a PTSD diagnosis presupposes a qualifying traumatic event, including sexual violence. Greif's PTSD diagnosis rested upon his finding that Wilson's attempted kiss constituted a qualifying traumatic event. But the only support Greif offered to support his conclusion that an attempted kiss qualified as sexual violence was a non-scientific blog post from a website he knew nothing about and his own subjective belief. Greif's diagnosis of UDD fares no better: it is confined to a single sentence that simply lists symptoms DeCanio reported experiencing.[6]

---

[6] Regarding "F32.9 Unspecified Depressive Disorder," Greif states: "For significant periods after she was sexually assaulted and when Deloitte was investigating the assault (5/29/24-3/10/25),

*Second*, Greif did not perform a rigorous differential diagnosis as to the *cause* of DeCanio's PTSD and UDD. He failed to rule out obvious alternative causes of DeCanio's symptoms. As described above, treatment records he failed to review prior to his diagnosis show that DeCanio had anxiety before the alleged assault. And because he never asked probing questions about her trauma history, he did not learn that a close family member died around the time of the termination. Furthermore, he did not differentiate between the alleged assault, Deloitte's investigation nine months later, and the termination of DeCanio's employment, as potential causes of her PTSD and/or UDD and could not conclude that either the investigation or the termination alone caused her PTSD or UDD.

*Third*, Greif relied almost entirely on DeCanio's own account of what caused her symptoms. He diagnosed PTSD and UDD after six hours of conversation and dismissed as inconsequential the clinical conclusions of her treating clinicians—one of whom treated her for two years, including throughout the events at issue.

**A. Greif's Diagnoses Are the Result of a Deeply Flawed Methodology.**

Exclusion is warranted where an expert's opinion contains "an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. at 146. Mere *ipse dixit*—"an unproven assertion resting on the bare authority of some speaker"—is not admissible under Rule 702. *ePlus, Inc. v. Lawson Software, Inc.*, 764 F.Supp.2d 807, 813 (E.D. Va. 2011) (excluding *ipse dixit* expert testimony as unreliable), *aff'd*, 700 F.3d 509 (Fed. Cir. 2012). *Slaby v. Holder*, No. 1:12-cv-1235 (AJT/IDD), 2013 WL 12147698, at * 2 (E.D. Va. July 24, 2013)

---

Ms. DeCanio had clinical symptoms—depressed mood, markedly diminished interest or pleasure in activities, weight gain, insomnia, fatigue and loss of energy,, [sic] feelings of guilt, diminished ability to concentrate—that fulfilled the criteria for this disorder." (Report at 17).

(excluding proffered expert opinion "not based on sufficient scientific, technical or specialized knowledge but rather subjective assessments, opinions and arguments").

Greif diagnosed DeCanio with PTSD and UDD caused by Wilson's alleged assault.[7] (Report at 17). Pursuant to the DSM-5-TR, the first criterion for diagnosing PTSD is determining that the person was exposed to actual or threatened death, serious injury, or sexual violence. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* § F43.10. Criterion A is required for a PTSD diagnosis. *Id.* Greif asserts that Wilson's alleged attempts to kiss DeCanio on May 29, 2024, constituted sexual violence in fulfillment of Criterion A. (Report at 15). After Wolf challenged this characterization as inconsistent with the DSM-5-TR (*see* Wolf Report at 15), Greif responded by citing to a blog post that appeared on the website of a personal injury law firm—Denver Trial Lawyers, which Greif could not confirm was peer-reviewed. (*See* Greif Rebuttal at 7). That post reported that survivors of non-physical forms of sexual abuse, including unwanted sexual advances, comments, or gestures that create a hostile or intimidating environment could experience PTSD. (*Id.*).

At his deposition, however, Greif admitted that he did not know what Denver Trial Lawyers was, did not know who authored the post, whether the authors were psychologists, or whether the post was peer-reviewed, and never attempted to locate any peer-reviewed literature supporting the post's claims:

---

[7] Admitting evidence of Wilson's alleged assault, and of the emotional distress DeCanio attributes to it, would be unduly prejudicial and confusing on the retaliation claims against Deloitte. *See* Fed. R. Evid. 403. Whether Wilson assaulted DeCanio is not among the questions the jury must decide on the remaining retaliation claims against Deloitte. Deloitte is not a defendant to the battery claim against Wilson, and the Court has held that the alleged assault does not establish an actionable hostile work environment against Deloitte. (Mem. Op. & Ord., Dkt. No. 259). That disposes of Greif's PTSD opinion as applied to the retaliation claim because Greif's diagnosis rests on the alleged assault as the qualifying event.

> Q: What is Denver Trial Lawyers?
> …
> A: You asked me that and I said I don't know. I still don't know.
>
> Q: Do you know whether it's a personal injury law firm?
>
> A: I don't know.
>
> Q: Do you know whether or not any of the authors of the blog post are psychologists?
>
> A: I don't know.
>
> Q: Do you know what the purpose of writing the blog post was?
>
> A: I don't know.
>
> Q: Do you know whether or not the blog post is peer-reviewed?
>
> A: I don't know.
>
> Q: Did you find any literature written by a psychologist that sets forth the same conclusion as the Denver Trial Lawyers' blog post?
>
> A: I don't know.
>
> Q: Did you find any by a psychologist?
>
> A: I didn't look for it, so, no, I didn't find it for this purpose.

(Greif Dep. 171:9-172:8).

Under *Daubert*, it is not enough for Greif to rely on his subjective belief. Peer-review and publication is a hallmark of reliability that the court considers when determining whether expert testimony is sufficiently reliable. *See Belville v. Ford Motor Co.*, 919 F.3d 224, 233 (4th Cir. 2019). The American Psychological Association, which promulgated nationally recognized Specialty Guidelines for Forensic Psychology (the "APA Guidelines"), similarly instructs practitioners that their opinions should be "sufficiently based upon adequate scientific foundation, and reliable and valid principles and methods" and, where opinions are "based on novel or

emerging principles and methods," the practitioner should "seek to make known [their] status and limitations." *See* APA Specialty Guidelines for Forensic Psychology 2.05 (2011), *available at* https://ap-ls.org/resources/guidelines/competence.[8]

Lacking any objective indicia of reliability, such as peer review, and in contravention of professional norms, Greif testified that he believed the blog post to be true because it "made complete sense to me psychologically and . . . buttressed my opinion." (*Id.* 172:12-14). This statement is classic *ipse dixit* of the type excluded in *Perkins v. United States*, 626 F.Supp.2d 587, 595 (E.D. Va. 2009), where the expert failed to "provide any methodological basis" for his conclusions. *See also Plantan v. Smith*, No. 3:22cv407, 2024 WL 3048648, at *11 (E.D. Va. June 18, 2024) (excluding expert testimony as *ipse dixit* where expert "made assumptions . . . without sufficient evidentiary grounding").

Because Greif failed to identify authority for his conclusion that an attempted kiss could qualify as sexual violence under the DSM-5-TR, he must identify another event to meet Criterion A, which is required for a clinician to diagnose PTSD. But as described above, Greif concluded that DeCanio had not experienced any traumatic events beyond the events at issue here. (*See* Greif Dep. 71:21-25 (Greif opined that "DeCanio did not have any previous traumatic events in her life.")). This leaves Wilson's alleged assault as the *sole* event identified by Greif as allegedly satisfying Criterion A. When challenged on that conclusion, Greif could not identify any scientific literature, peer-reviewed authority, or accepted diagnostic source supporting his interpretation and instead relied on non-scientific musings in a blog post from the website of a personal injury law

[8] The APA Guidelines "apply in all matters in which psychologists provide expertise to judicial . . . systems" and "[serve] to identify a high level of quality in forensic practice." *Id. available at* https://www.apa.org/practice/guidelines/forensic-psychology?item=1.

firm. This methodology does not reflect the reliable application of professional principles described in Rule 702 and *Daubert*. Accordingly, Greif's diagnosis of DeCanio as having suffered from PTSD because of the alleged assault should be excluded as unreliable.[9]

**B. Greif Did Not Conduct a Differential Diagnosis to Form a Reliable Opinion on PTSD Causation.**

A differential diagnosis is "a process whereby medical doctors experienced in diagnostic techniques provide testimony countering other possible causes of the injuries at issue." *Roche v. Lincoln Prop. Co.*, 278 F.Supp.2d 744, 750 n.4 (E.D. Va. 2003) (citation modified) (excluding expert testimony where expert failed, among other things, to rule out other potential causes of the plaintiffs' symptoms). Commentary to Rule 702 provides that an expert opinion that fails to take serious account of other potential causes of the phenomenon in question cannot provide a reliable basis for an opinion on causation. *See* Fed. R. Evid. 702 advisory committee note, 2000 amendments (among the factors courts should consider when determining the admissibility of expert testimony is "whether the expert has adequately accounted for obvious alternative explanations"). A differential diagnosis is reliable where the expert "determin[es] the possible causes for the patient's symptoms and then eliminat[es] each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely." *Zellars v. NexTech Ne., LLC*, 895 F.Supp.2d 734, 742 (E.D. Va. 2012) (excluding the plaintiffs' experts on causation where they failed to "inquire about or investigate [the

[9] Greif's diagnosis of UDD, a catch-all diagnosis, also resulted from a deeply flawed methodology. As Wolf observed in her Report, UDD requires specifying an area of clinically significant distress. (Wolf Report at 15). But Greif fails to do so, simply listing symptoms. (Report at 17). With no adequate basis for the UDD diagnosis, Greif's opinion similarly should be excluded under Rule 702 and *Daubert*.

plaintiffs'] medical histories in order to properly determine what possible causes of their medical conditions should be ruled in"), *aff'd* (July 17, 2013).

Thus, a court should exclude an expert's testimony where the expert "utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001) (excluding testimony where expert failed to consider alternative causes for the plaintiff's symptoms); *see also Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F.Supp.2d 465, 469-70 (M.D.N.C. 2006) (in assessing reliability, courts consider "whether [the] expert has adequately accounted for obvious alternative explanations"). Expert testimony is properly excluded as unreliable where the expert fails to "thoroughly review [the plaintiff's] medical records." *Payne v. Wyeth Pharms., Inc.*, No. 2:08cv119, 2008 WL 5586824, at *5 (E.D. Va. Nov. 17, 2008) (excluding expert testimony where physician was provided only a selection of the plaintiff's medical records prior to drafting report and dismissed possible alternative cause "summarily" without careful analysis). And the APA Guidelines instruct forensic psychologists to "differentially test plausible rival hypotheses" and "examin[e] the issue . . . from all reasonable perspectives." APA Guidelines 9.01, *available at* https://ap-ls.org/resources/guidelines/methods.

While asserting that he considered other diagnoses before settling on PTSD, Greif admits that he did not consider any of the preexisting conditions DeCanio's treating clinicians had observed. (Greif Dep. 208:16-209:18). And while Greif claims to have considered other diagnoses (including panic disorder, and different depressive and trauma disorders), he did not consider other possible *causes* for his PTSD and UDD diagnoses: that is, what stressor or event *caused* the symptoms DeCanio reported. Crucially, Greif's conclusion was not just that DeCanio suffered from PTSD and UDD, but that she suffered from them "as a result" of "Wilson's sexual assault"

and "Deloitte's callous treatment of her." (Report at 17). But Greif did not consider other causes for her reported symptoms because he did not review her prior treatment records or deposition testimony and otherwise failed to elicit crucial information about her prior mental health treatment and past traumatic experiences. Because Greif failed to investigate and account for obvious alternative explanations for DeCanio's reported symptoms, his causation opinions are not the product of a reliable differential analysis and should be excluded under Rule 702.

**C. Greif Relied Primarily on DeCanio's Self-Report of What Caused Her Symptoms.**

Greif's methods were unreliable (and thus his opinions must be excluded) for an additional reason: he accepted DeCanio's account of the cause of her symptoms without adequately testing that account against contrary information, alternative explanations, or significant portions of her mental health history. *See Perkins*, 626 F.Supp.2d at 593. As *Perkins* explained, "[e]ven if the medical profession does not fault [the expert physician] for his reliance on [the plaintiff's] self-report, and in turn, his ignorance of [the plaintiff's] prior trauma and treatment, the law still demands that his expert testimony be reliable." *Id.* (excluding expert opinion where expert failed to investigate fully the plaintiff's medical history). As discussed above, he did not review Coleman's 2023 treatment records prior to diagnosing DeCanio and drafting his Report or rebuttals. (Greif Dep. 73:7-24). He also did not review DeCanio's deposition testimony, which would have shown whether her account to him was consistent with what she had said elsewhere. (*Id.* 89:12-90:5). Nor did he test his diagnosis against other significant sources of information bearing on causation, including information concerning other potential stressors in DeCanio's life. This approach flies in the face of the APA Guidelines, which direct forensic practitioners to "avoid relying solely on one source of data, and corroborate important data whenever feasible." APA Guidelines 9.02, *available at* https://www.apa.org/practice/guidelines/forensic-psychology; *see also Slaby*, 2013 WL 12147698, at *2 (excluding testimony of proposed expert whose opinions

were, among other things, "based on a recitation of facts provided by the plaintiff" and "based on the subjective inferences he [drew] from the recited facts").

Not only did Greif rely almost exclusively on DeCanio's self-report and a handful of his own assessments, but he also rejected in a conclusory fashion the clinical conclusions of the one clinician whose notes he *did* review—Fender, who treated DeCanio for two years—including at the time of and after the alleged assault. Greif admits that Fender never diagnosed DeCanio with PTSD. (Greif Dep. 191:2-4).[10] Yet Greif—who met with DeCanio for six hours and relied largely on her own self-report—rejected Fender's clinical conclusions, opining that Fender had "under-diagnosed [DeCanio]" because her diagnosis was "extremely inconsistent with the data that I found." (*Id.* 190:1-2, 209:1-5).

In reaching his diagnosis, Greif selectively relied on the available data: he relied primarily on DeCanio's self-report, failed to explore alternative causes, and summarily rejected information that challenged or complicated his desired conclusion. *See E.E.O.C. v. Freeman*, 778 F.3d 463, 469 (4th Cir. 2015) (Agee, J., concurring) (courts "consistently exclude[] expert testimony that 'cherry-picks' relevant data") (collecting cases); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07–CV–275–D, 2011 WL 6748518, at *7 (E.D.N.C. Dec. 22, 2011) (excluding an expert whose methodology "reveal[ed] a series of ad hoc decisions based on subjective considerations, rather than identifiable (or principled) criteria").

---

[10] Further, Greif reports that when DeCanio asked Fender whether she would provide an assessment of DeCanio for this litigation, Fender replied that her assessment would be "neutral," which DeCanio interpreted as retaliatory and insufficiently supportive. (Report at 16; Greif Dep. 50:25-53:5, 53:13-16).

## III. GREIF'S FINDINGS AND OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE NOT RELIABLY BASED ON SUFFICIENT FACTS OR DATA UNDER RULE 702(b).

Rule 702(b) requires that expert testimony be "based on sufficient facts or data." Fed. R. Evid. 702(b). "[A]ny reliable causation testimony based on temporal relationship must be based upon complete and accurate facts." *Fitzgerald v. Smith & Nephew, Inc.*, 11 F. App'x 335, 340 (4th Cir. 2001) (affirming exclusion of expert whose opinions were based on "only a portion" of the plaintiff's medical history). Greif's findings and opinions regarding his diagnoses of DeCanio are based on insufficient facts and data.

As described above, while Greif purports to have administered the CAPS-5 assessment during his in-person conversation with DeCanio, he admits that he failed to administer the Life Events Checklist, a key component of the CAPS-5 assessment. (Greif Dep. 25:3-4; 71:14-18). Further, although Greif knew DeCanio had previously received mental health treatment from two separate clinicians, he failed to review the records of one of those clinicians (Coleman) before diagnosing DeCanio and drafting his Report. (*Id.* 78:5-17). He likewise failed to review DeCanio's or Wilson's deposition testimony concerning the events at issue. (*Id.* 89:12-90:5).

As described more fully below, Greif's assessment of DeCanio not only failed to meet the *Daubert* standard of reliability; it also deviated from the reasonably prudent professional norms for forensic psychologists promulgated by the APA.

### A. Greif Diagnosed DeCanio With PTSD and Unspecified Depressive Disorder Without Reviewing Her Pre-Existing Mental Health Records.

Greif's Report reveals that he knew before he diagnosed DeCanio that she had a history of mental health treatment, including seeking (and receiving) treatment for stress and anxiety in 2023, a year before the alleged assault. (Report at 12 ("She first sought help from a psychotherapist in 2023 due to anxiety and stress arising from the burdensome work culture at Deloitte."); Greif Dep.

73:7-15). Yet he failed to ask any meaningful questions about that treatment or why she sought it out in the first place. (Greif Dep. 232:6-19).

Nor did he request or review Coleman's notes before issuing any of his reports. (*Id.* 73:16-24). Greif admitted that, after he eventually did review Coleman's notes (long after he had submitted his Report and the Greif Rebuttal), DeCanio had told Coleman that she had "always had anxiety." (*Id.* 75:1-10). He dismissed the value of the notes, however, saying about them, "I don't think I learned anything new." (*Id.* 73:25-74:3). But he admitted that he never followed up with DeCanio to better understand the anxiety she had experienced in 2023. (*Id.* 75:15-19).

Wolf's supplemental report describes Coleman's records as reflecting significant work-related stress *before* the alleged assault. (*See* Stephanie Wolf Supplemental Report at 9). Yet Greif skips over Coleman's treatment of DeCanio's anxiety in 2023 in a single, conclusory sentence and barely references Fender's treatment for the same—even though he repeatedly identifies the alleged assault as the cause of DeCanio's anxiety and foundation for his PTSD and UDD diagnoses. (*See, e.g.*, Report at 3, 4, 12-17). Because Greif diagnosed DeCanio before reviewing Coleman's treatment records, he did not consider one obvious alternative explanation for her symptoms: that her anxiety predated the events at issue and was unrelated to them. Relying on an incomplete set of records renders his causation opinion unreliable. *See Price v. White*, No. 5:23-cv-00010, 2025 WL 2665322, at *7 (W.D. Va. Sept. 17, 2025) (excluding medical doctor's expert opinion as "rest[ing] on an incomplete and selective factual basis" and thus "not 'based on sufficient facts or data'" where doctor failed to review [the plaintiff's] prior treatment records); *see also Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record.").

### B. Greif Failed to Obtain Critical Facts Related to DeCanio's History of Trauma.

Greif's Report and opinions are not based on sufficient facts and data for a second reason: he omits critical facts regarding DeCanio's history and failed to elicit relevant information about other stressors in DeCanio's life, either at the time of the events at issue or in her history, that might explain her reported symptoms. At his deposition, Greif admitted that he never probed whether DeCanio had experienced other traumas in her life. (Greif Dep. 222:6-15).

Further, although Greif's notes suggest he administered part of the CAPS-5 during the interview (*id.* 226:17-227:6), he admits that he never administered the Checklist. (*Id.* 71:14-18). This oversight is significant: the Checklist is the component of the CAPS-5 designed to elicit information about past traumatic events. When asked at his deposition why he failed to administer the Checklist, Greif replied:

> [I]t was not necessary in order to determine that Ms. DeCanio did not have any previous traumatic events in her life, and that was based on my interview with her and review of the records.

(*Id.* 71:21-25).

Because Greif failed to administer the Checklist, he therefore failed to elicit any information about DeCanio's history of trauma. Indeed, as Wolf's Supplemental Report makes plain that DeCanio endured the deaths of several close family members, one in the same month and year as the events at issue; the accidental drowning of a close friend in college; and several serious accidents. (*See* Glasser Decl. Ex. F ("Supplemental Wolf Report") at 12-14). Greif testified that DeCanio "did not have any previous traumatic events in her life" without any such inquiry. (Greif Dep. 71:21-25). Moreover, by choosing not to administer the Checklist—the portion of the CAPS-5 specifically designed to identify prior traumatic experiences—Greif failed to gather information directly relevant to whether other traumatic events may have contributed to DeCanio's reported symptoms. *See* APA Guidelines 10.2, *available at* https://ap-

ls.org/resources/guidelines/assessment; APA Guidelines 9.01, *available at* https://ap-ls.org/resources/guidelines/methods.

Greif's failure to explore in any structured way DeCanio's history of trauma generally, and his failure to administer the Checklist in particular, render his opinion that DeCanio's PTSD was *caused by* the events at issue unreliable because it was based on insufficient facts and data. Accordingly, his diagnosis should be excluded.

## IV. GREIF'S OPINIONS DO NOT SATISFY RULE 702(a) BECAUSE THEY ARE NOT HELPFUL TO THE TRIER OF FACT AND USURP THE ROLE OF THE FACTFINDER.

"[E]xpert witnesses have the potential to be 'both powerful and quite misleading.'" *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 595). For that reason, Rule 702(a) permits an expert to testify when their specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue. Fed. R. Evid. 702(a). Here, Greif's opinions impermissibly invade the province of the factfinder as to whether sexual violence or assault occurred, which Criterion A requires. Moreover, because the Court has dismissed DeCanio's hostile work environment claim against Deloitte, whether the alleged assault occurred is not a question the jury must decide on the remaining retaliation claims against Deloitte, and DeCanio is not entitled to damages for any alleged emotional distress that may have resulted from the alleged assault. Such opinion testimony would be misleading and unduly prejudicial to Deloitte. Fed. R. Evid. 403.

Greif acknowledges that "it is not the job of a forensic evaluator to ascertain whether the alleged assault occurred, it is the job of the jury." (Greif Rebuttal at 3). At the same time, however, Greif unequivocally declares that "Mr. Scott Wilson's sexual assault on Ms. Melanie DeCanio on May 29, 2024, had devastating psychological consequence." (Report at 2). He also opines that "Ms. Melanie DeCanio was severely psychologically damaged by Mr. Scott Wilson's sexual

assault; his ongoing hostile and abusive treatment of her, including other sexual boundary violations; and by Deloitte's callous treatment of her after she reported the assault." (*Id.* at 8). To testify that a sexual assault occurred "is not traditional medicine, psychiatry or science; it is traditional jury-factfinding." *Spencer v. General Electric Co.*, 688 F.Supp.1072, 1076 (E.D. Va. 1988) (holding that expert testimony that a rape victim suffers from PTSD is inadmissible to prove that a rape occurred). Because the Court has dismissed the hostile work environment claims, the alleged assault is not a basis for liability or damages against Deloitte. The only question remaining for trial is whether Deloitte retaliated against DeCanio for what she reported about the alleged assault. (Mem. Op. & Ord., Dkt. No. 259).

Rule 702 does not permit an expert to invade the province of the jury by offering unreliable, non-scientific opinions as to whether DeCanio was assaulted or would not have experienced her alleged injuries but for her alleged assault. Greif's conclusory opinions about the alleged assault and its effects therefore should be excluded from the retaliation trial. *See Slaby*, 2013 WL 12147698, at *2 (precluding testimony by proposed expert comprising "non-expert conclusory opinions about critical issues in the case . . . [that were] likely to mislead the jury").

## <u>CONCLUSION</u>

For the foregoing reasons, Deloitte respectfully requests that the Court enter an Order: (i) excluding from evidence Greif's opinions, conclusions, and findings; (ii) excluding from evidence Greif's diagnosis of DeCanio as having suffered from PTSD and UDD; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: November 13, 2026

EPSTEIN BECKER & GREEN, P.C.

*/s/ Nathaniel M. Glasser*
Nathaniel M. Glasser, VSB # 90406
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037-1175
Tel: (202) 861-1863
Fax: (202) 861-3081
nglasser@ebglaw.com

David W. Garland (*Admitted pro hac vice*)
Brittany J. Finder (*Admitted pro hac vice*)
dgarland@ebglaw.com
bfinder@ebglaw.com
875 3rd Ave
New York, New York 10022
Tel: (212) 351-4500
Fax: (212) 878-8600

*Attorneys for Defendant*
*Deloitte & Touche LLP*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of November 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Nathaniel M. Glasser*
Nathaniel M. Glasser, VSB # 90406