**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

MELANIE DECANIO,

Plaintiff,

v.

DELOITTE & TOUCHE LLP, and
SCOTT WILSON,

Defendants.

Case No.: 1:25-cv-01980-AJT-IDD

**MEMORANDUM OF LAW IN SUPPORT OF**
**SCOTT WILSON'S MOTION TO SEVER AND TRANSFER VENUE**

KIERNAN TREBACH LLP
1776 Eye Street, N.W., Sixth Floor
Washington, D.C. 20006
Tel: (202) 712-7000
Fax: (202) 712-7100
*Attorneys for Scott Wilson*

## I. BACKGROUND

On or about November 14, 2025, Melanie DeCanio ("Plaintiff") filed her Complaint in this action against her former employer, Deloitte & Touche LLP ("Deloitte"), and her former superior at Deloitte, Scott Wilson ("Mr. Wilson"). *See* Complaint, generally. In her Complaint, Plaintiff presented the following claims against Deloitte:

a. Sex Discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Virginia Human Rights Act (Count I);
b. Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964 and the Virginia Human Rights Act (Count II);
c. Retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Virginia Human Rights Act (Count III); and
d. Wrongful Discharge (Count IV).

After dispositive motions practice, Plaintiff maintains only the following claim against Deloitte: **Retaliation** in violation of Title VII of the Civil Rights Act of 1964 and the Virginia Human Rights Act (Count III).[1] *See* ECF. 157, 259.

In her Complaint, Plaintiff presented the following claims against Mr. Wilson:

a. Battery (Count V); and
b. Intentional Infliction of Emotional Distress (Count VI).

After dispositive motions practice, Plaintiff maintains only the following claim against Mr. Wilson: **Battery** (Count V). *See* ECF. 259.

The battery claim against Mr. Wilson centers around alleged events that occurred during a Deloitte work event at the Choptank restaurant in Annapolis, Maryland on May 29, 2024 (hereafter the "Choptank dinner"). Compl. ¶¶ 20, 97-99. Specifically, Plaintiff alleges that Mr. Wilson placed his hand on her thigh under the table without Plaintiff's "prompt or invitation," and that while

---

[1] On June 24, 2026, the Court granted Deloitte's Motion to Dismiss as to Counts I and IV of the Complaint. *See* ECF. 157. Mr. Wilson's Motion to Dismiss adopted and incorporated the arguments set forth in Deloitte's Motion to Dismiss as to Count IV of the Complaint. *See* ECF 32 and 33, respectively. On November 10, 2026, the Court granted Deloitte's Motion for Summary Judgment as to Count II of the Complaint and granted Mr. Wilson's Motion for Summary Judgment as to Count VI of the Complaint. *See* ECF. 259.

Plaintiff and Mr. Wilson were later in a bathroom stall together that evening, Mr. Wilson lunged at Plaintiff in attempt to kiss her, shoving her arm out of the way as Plaintiff tried to push him away from her. Compl. ¶¶ 21, 25-28, 97-98. Plaintiff further alleges that Mr. Wilson intended to and did cause harmful and offensive contact to Plaintiff when he placed his hand on her thigh and shoved her arm out of the way in attempt to kiss her without consent. Compl. ¶¶ 97-99. The alleged events at the Choptank dinner are the sole basis for Plaintiff's battery claim against Mr. Wilson.

The retaliation claim against Deloitte alleges that Plaintiff "engaged in a protected activity when she complained [to Deloitte] about discrimination and harassment [by Mr. Wilson] based on her sex," and that in retaliation for those complaints, Deloitte used Plaintiff's breach of accounting protocol as a pretextual reason to terminate Plaintiff "for cause." Compl. ¶¶ 42-43, 46-47, 62-63, 88-89. The Complaint does not specify what Plaintiff allegedly reported to Deloitte regarding "discrimination and harassment" by Mr. Wilson. Moreover, the developed record demonstrates that Plaintiff could not recall if she informed Deloitte's Talent Relation's team during its February 2026 investigation that Mr. Wilson placed his hand on her thigh at the Choptank dinner, and the notes of Plaintiff's interview with Deloitte's Talent Relations team do not reflect that Plaintiff disclosed that information. Doc. No. 243-1 at 51, 247. There is no record of Plaintiff reporting to Deloitte that Mr. Wilson made physical contact with her while in the bathroom stall.

## II. LEGAL STANDARD FOR SEVERANCE

"Federal Rule of Civil Procedure 20(a) governs permissive joinder of parties and provides, in part, that plaintiffs may join multiple defendants in one action if: (A) any right to relief is asserted against [the defendants] . . . arising out of the same transaction, occurrence, or series of transactions or occurrences; and[,] (B) any question of law or fact common to all defendants will arise in the action." *Moulvi v. Safety Holdings, Inc.*, 2021 U.S. Dist. LEXIS 189496, *16 (E.D. Va.

September 30, 2021) (citing Fed. R. Civ. P. 20(a)). Fed. R. Civ. P. 20(a) "'gives courts wide discretion concerning the permissive joinder of parties,' *SunTrust Banks, Inc. v. Robertson*, No. 2:09cv197, 2010 U.S. Dist. LEXIS 165693 at *2 (E.D. Va. July 27, 2010) (quoting *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Or. 2007)), and 'must be interpreted to allow for the broadest possible scope of action consistent with fairness to the parties.'" *Id.* (citing *Hanna v. Gravett*, 262 F. Supp. 2d 643, 647 (E.D. Va. 2013); (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"Although guiding principles exist, whether parties are properly joined under Rule 20 requires a case-by-case inquiry." *Gregory v. FedEx Ground Package Sys.*, 2012 U.S. Dist. LEXIS 87798, *32 (E.D. Va. May 9, 2012) (citing *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983)). "Indeed, the United States Court of Appeals for the Fourth Circuit has stated that 'the rule should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits,' *Saval*, 710 F.2d at 1031 (internal quotation marks omitted), and the Supreme Court of the United States has declared that 'joinder of claims, parties and remedies is strongly encouraged.'" *Moulvi*, 2021 U.S. Dist. LEXIS 189496 at *17 (citing *United Mine Workers of America*, 383 U.S. at 724).

Pursuant to Fed. R. Civ. P. 21, "a court 'may at any time, on just terms, add or drop a party' or 'sever any claim against a party.'" *Gregory v. FedEx Ground Package Sys.*, 2012 U.S. Dist. LEXIS 87798, *31 (E.D. Va. May 9, 2012) (citing Fed. R. Civ. P. 21). "Although Rule 21 does not identify when severing claims or dropping parties is appropriate, parties are considered misjoined when they fail to satisfy the standard for permissive joinder in Rule 20." *Id.* at *31 (citing *Hanna v. Gravett*, 262 F. Supp. 2d 643, 647 (E.D. Va. 2003) ("[a] district court possesses broad discretion in ruling on a requested severance"). "Indeed, courts might allow severance even

if Rule 20(a)'s two-pronged test seems to have been satisfied." *Moulvi*, 2021 U.S. Dist. LEXIS 189496, *16 (citing *Sykes v. Bayer Pharms. Corp.*, 548 F, Supp. 2d 208, 218 (E.D. Va. 2008) ("[A] court may 'deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay.'") (internal citations omitted).

"In determining whether severance is proper, district courts within the Fourth Circuit consider: (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed. *Latson v. Clarke*, 2016 U.S. Dist. LEXIS 195277, *7-8 (E.D. Va. October 14, 2016) (citing *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007)). "Courts also consider (5) fundamental fairness, (6) judicial economy, (7) undue delay, and (8) the dual threat of duplicative litigation and inconsistent verdicts." *Id.* (citing *Carmine v. Poffenbarger*, 154 F. Supp. 3d 309, 319-20 (E.D. Va. 2015)).

## III. LEGAL STANDARD FOR TRANSFER OF VENUE

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division… where it might have been brought[.]" *Latson*, 2016 U.S. Dist. LEXIS 195277 at *8-9 (quoting 28 U.S.C. § 1404(a)). "Pursuant to 28 U.S.C. § 1391(b), a case may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an

action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *Id.* at *8-9. Applying this Court's Local Rules to Section 1391(b)(2), "venue is proper in 'a [division] in which a substantial part of the events or omissions giving rise to the claim occurred[.]'" *Id.* at *9 (citing E.D. Va. Loc. Civ. R. 3(C)).

"In determining whether to transfer venue, district courts within the Fourth Circuit consider: '(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice.'" *Id.* (quoting *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (citations omitted). "The movant bears the burden to establish that transfer is proper in light of these factors." *Id.* (citing *Chruby v. Glob. Tel*Link Corp.*, 119 F. Supp. 3d 399, 403 (E.D. Va. 2015)).

## IV. ARGUMENT

### A. Plaintiff Fails to Satisfy the Permissive Joinder Standard Under Fed. R. Civ. P. 20.

#### 1. Plaintiff's claims against Mr. Wilson and Deloitte do not arise out of the same transaction, occurrence, or series of transactions or occurrences.

Plaintiff's claim for battery against Mr. Wilson and her claim for retaliatory discharge against Deloitte do not satisfy the first prong of this Court's permissible joinder test, as the claims do not arise from the same transaction or occurrence. "Under Rule 20, 'reasonably related claims' may be tried together." *Sykes v. Bayer Pharms. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (quoting *Saval*,710 F.2d at 1031). "To be reasonably related, there must be some logical connection or relationship between the transactions or occurrences." *Courthouse News Serv. v. Schaeffer*, 429 F. Supp. 3d 196, 201 (E.D. Va. 2019) (citing *Johnson v. City of Fayetteville*, No.

5:12cv456, 2015 U.S. Dist. LEXIS 68393 at *2 (E.D.N.C. May 27, 2015)). The "actions of joined parties [are] 'logically related' where the events consist[] of a consistent pattern of behavior employed by defendants." *Id.* at 202 (quoting *M.K. v. Tenet*, 216 F.R.D. 133, 142 (D.D.C. 2002)). Rule 20 "does not authorize a plaintiff to add claims 'against different parties [that] present[] entirely different factual and legal issues.'" *Sykes,* 548 F. Supp. 2d at 218 (quoting *Lovelace v. Lee*, 2007 U.S. Dist. LEXIS 77890 at *1 (W.D. Va. Oct. 21, 2007)). "And, a court may 'deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay.'" *Id.* (quoting *Aleman,* 485 F.3d at 218 n.5). Indeed, "[a]lthough the transaction or occurrence test of Rule 20 permits all 'reasonably related claims... to be tried in a single proceedin…, [m]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder.'" *LHF Prods. v. Doe*, 2016 U.S. Dist. LEXIS 177733, *8 (E.D. Va. December 22, 2016) (quoting *Saval*, 710 F.2d at 1031); (quoting *Raw Films, Ltd. v. Does 1-32*, No. 3:11cv532, 2011 U.S. Dist. LEXIS 114996 at *2 (E.D. Va. Oct. 5, 2011))

In *James v. ServiceSource, Inc.*, this Court rejected the plaintiff's attempt to join his disability discrimination claim against his former employer, ServiceSource, Inc., and his medical malpractice claim against his medical provider, the United States Department of Veterans Affairs ("USDVA"). *James v. ServiceSource, Inc.*, 555 F. Supp. 2d 628, 632 (E.D. Va. 2008). In that case, the plaintiff argued that the claims arose from the same transaction and occurrence because he lost his health insurance due to his wrongful termination and was forced to receive substandard healthcare from USDVA, which caused him physical and financial injuries due to alleged medical malpractice. *Id.* at 633. This Court held that joinder was improper because "Plaintiff's claims against the USDVA and ServiceSource arise from two different controversies and are supported

by two different sets of facts," reasoning "[t]he fact that ServiceSource at one time provided Plaintiff's health insurance, and that Plaintiff received care at USDVA facilities under this coverage, does not now mean that Plaintiff's medical malpractice claims against the USDVA arise out of the same transaction as his disability discrimination claims against ServiceSource." *Id.*

Similarly, in *LHF Prods. v. Doe*, this Court held that the defendants' use of BitTorrent to download and share pieces of the same movie did not satisfy the first prong of the joinder test because there were no alleged facts to suggest the defendants shared the pieces with each other, and thus the sharing of those pieces to third parties did not arise out of the same transaction or occurrence as required by Fed. R. Civ. P. 20. *LHF Prods. v. Doe*, 2016 U.S. Dist. LEXIS 177733, *8 (E.D. Va. December 22, 2016).

Relatedly, in *Advamtel, LLC v. AT&T Corp.*, this Court concluded that the plaintiffs could be joined because their claims arose from the same transactions or occurrences by making long-distance calls that were routed from the plaintiffs' local networks to defendants AT&T's and Sprint's long-distance networks. *Advamtel, LLC v. AT&T Corp.*, 105 F. Supp. 2d 507, 513-14 (E.D. Va. 2000). However, this Court held that plaintiffs' joint claims against defendants for the collection of disputed long-distance tariff charges and a violation of the Communications Act failed to meet the transaction and occurrence test. *Id.* at 514-15. This Court reasoned that the "plaintiffs did not have dealings with Sprint that were similar to their dealings with AT&T, except that both defendants have challenged the reasonableness of plaintiffs' tariff rates. Nor do plaintiffs allege that defendants acted in concert in this regard… This indicates that the case against each defendant may well proceed quite differently, which is yet another argument against joinder of these defendants." *Id.*

As demonstrated by this Court's application of the transaction and occurrence test, Plaintiff's battery claim against Mr. Wilson and her retaliatory discharge claim against Deloitte are not logically related, as the alleged events at the Choptank dinner on May 29, 2024 and Deloitte's alleged decision to retaliate against Plaintiff by terminating her employment on March 10, 2025 for engaging in a protected activity do not arise from the same transaction, nor do they constitute a showing of a consistent pattern of behavior by Defendants. See *Courthouse News Serv. v. Schaeffer*, 429 F. Supp. 3d at 20; *See* also Compl. ¶¶ 8, 20. Indeed, Plaintiff does not allege that she ever engaged in a protected activity or disclosure involving Mr. Wilson, that Mr. Wilson conducted Deloitte's investigation into Plaintiff's alleged reports of harassment and discrimination, or that Mr. Wilson had any authority to terminate Plaintiff, to change her title, or to make any decisions regarding her pay and/or benefits. There is no evidence to show or suggest that, prior to her termination, Plaintiff reported to Deloitte that Mr. Wilson touched her thigh or that he had any physical contact with her while in the bathroom at the Choptank dinner.

Based on the record in this matter, similar to *Advamtel, LLC v. AT&T Corp.*, *James v. ServiceSource, Inc.*, and *LHF Prods. v. Doe*, the only factual connection between Mr. Wilson and Deloitte regarding Plaintiff's battery and retaliatory discharge claims is that the Choptank dinner event involved Deloitte's employees (although none are alleged to have witnessed the alleged battery). *See ServiceSource, Inc.*, 555 F. Supp. 2d at 632; *Advamtel, LLC*, 105 F. Supp. 2d at 513-14; *LHF Prods*, 2016 U.S. Dist. LEXIS 177733 at *8. This factual connection is insufficient to establish that Plaintiff's claims are logically related, as Plaintiff does not allege that Mr. Wilson and Deloitte acted in concert, or that their actions constituted a consistent pattern of joint behavior. Moreover, Plaintiff asserts that Mr. Wilson's conduct at the Choptank dinner and Deloitte's

conduct during its alleged retaliatory conduct occurred approximately ten (10) months apart. *See* Compl. ¶¶ 8, 20.

Accordingly, Mr. Wilson and Deloitte are misjoined as parties to this action because Plaintiff's claims for battery and retaliatory discharge arise from two different controversies and are supported by two different sets of facts, thus failing to satisfy Fed. R. Civ. P. 20's same transaction and occurrence test.

**2. Plaintiff's claims against Mr. Wilson and Deloitte do not assert a common question of law or fact.**

Plaintiff's claim for battery against Mr. Wilson and her claim for retaliatory discharge against Deloitte do not satisfy the second prong of this Court's permissible joinder test, as the claims do not present a common question of law or fact.

First, applying Virginia's choice-of-law doctrine, Maryland law governs Plaintiff's battery claim because the alleged battery occurred in Annapolis, Maryland. See *Hazelwood v. Law. Garage, LLC*, 81 Va. App. 586 (2024) (The settled rule in Virginia is that the substantive rights of the parties in a multistate tort action are governed by the law of the place of the wrong.). Under Maryland law, battery is an intentional tort that requires Plaintiff to present evidence establishing that Mr. Wilson made physical contact with her, that Mr. Wilson intended the contact to be harmful or offensive, and that Plaintiff did not consent to the contact. *Hendrix v. Burns*, 205 Md. App. 1, 19-20 (2012). "It is universally understood that some form of intent is required for battery… [but] [t]he intent element of battery requires not a specific desire to bring about a certain result, but rather a general intent to unlawfully invade another's physical well-being through a harmful or offensive contact or an apprehension of such a contact." *Id.* at 20 (internal citations omitted).

Second, to establish a *prima facie* case of retaliation against Deloitte under Title VII and the VHRA, Plaintiff must prove that: (1) she engaged in protected activity, (2) Deloitte took a

materially adverse employment action against her, and (3) there is a causal connection between the protected activity and the adverse action. See *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Racklin v. Zeta Glob. Corp.*, 628 F.Supp.3d 625, 655 (E.D. Va. 2022) (Trenga, J.), aff'd, No. 22-2077, 2023 WL 5165281 (4th Cir. Aug. 11, 2023). "Since the legal standards are identical, courts in this district analyze Title VII and VHRA discrimination claims and retaliation claims under Title VII's framework." *Loganathan v. Ferguson Enterprises LLC*, No. 4:25-cv-120, 2026 WL 2676635, at *3 (E.D. Va. Sept. 11, 2026). A plaintiff bears a "high burden" to demonstrate that her employer's stated reasoning for termination was pretextual, and "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Watt v. Mabus*, No. 1:12–cv–128, 2014 WL 2533399, at *4-5 (E.D. Va. June 4, 2014) (internal citations omitted).

The record in this matter clearly demonstrates that the elements of Plaintiff's simple battery claim and her complex retaliatory discharge claim present entirely different and unrelated legal and factual issues that require entirely different elements of evidence. There is no commonality to be found when determining whether Mr. Wilson intended harmful or offensive contact at the Choptank dinner and whether Plaintiff engaged in a protected activity when reporting discrimination and harassment to Deloitte's Talent Relation's team, whether Deloitte took a materially adverse employment action against her, whether there is a causal connection between Plaintiff's report and Deloitte's decision to terminate her, and whether Plaintiff's breach of accounting protocol served as a pretext for Deloitte's alleged retaliation under Title VII's framework. Allowing Mr. Wilson's simple battery claim to be tried alongside Deloitte's complex retaliatory discharge claim would unfairly and unduly prejudice Mr. Wilson, hinder trial efficacy

by delaying the final determination of disputes, confuse the jury, and create unreasonable trial costs and expenses for Mr. Wilson.

Mr. Wilson and Deloitte are misjoined as parties to this action, because even when interpreted broadly, Plaintiff's claims for battery and retaliatory discharge do not present a common question of law or fact as required under Fed. R. Civ. P. 20.

**B. Plaintiff's Claim for Battery Against Mr. Wilson Must be Severed From this Action to Prevent Unfair Prejudice.**

Assuming *arguendo* that joinder were proper under Fed. R. of Civ. P. 20(a), *which it is not*, Fed. R. Civ. P. 21 provides grounds for this Court to sever Mr. Wilson from this action due to the reasonable likelihood of prejudice, expense, or delay. See *Gregory*, 2012 U.S. Dist. LEXIS 87798 at *31; *See* also *Moulvi*, 2021 U.S. Dist. LEXIS 189496, *16 (citing *Sykes*, 548 F, Supp. 2d at 218 ("[A] court may 'deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay.'"). Applying this Court's eight (8) factor severance analysis,[2] Mr. Wilson must be severed from this action for the following reasons.

**1. The issues for Plaintiff's battery claim and Title VII retaliatory discharge claim are significantly different from one another.**

The first factor is whether the issues sought to be tried separately are significantly different from one another. *Latson v. Clarke*, 2016 U.S. Dist. LEXIS 195277, *14 (E.D. Va. October 14, 2016). In *Latson v Clarke*, this Court severed defendants from an action asserting constitutional

[2] "In determining whether severance is proper, district courts within the Fourth Circuit consider: (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed. *Latson v. Clarke*, 2016 U.S. Dist. LEXIS 195277, *7-8 (E.D. Va. October 14, 2016) (citing *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007)). "Courts also consider (5) fundamental fairness, (6) judicial economy, (7) undue delay, and (8) the dual threat of duplicative litigation and inconsistent verdicts." Id. (citing *Carmine v. Poffenbarger*, 154 F. Supp. 3d 309, 319-20 (E.D. Va. 2015)).

violation claims that included allegations of physical force against one defendant, and allegations against both defendants that differed in time and location. *Id.* at *5, 14-15. This Court reasoned that "even though some legal theories between both groups of Defendants overlap, the facts underlying the issues sought to be tried separately are significantly different in terms of the time period, location, and individuals involved. In essence, this case involves two discrete sets of acts by two discrete sets of actors, and the common denominator is the Plaintiff." *Id.* at *14-15.

As demonstrated in the permissive joinder analysis set forth above, the issues alleged in Plaintiff's battery claim against Mr. Wilson and her Title VII retaliatory discharge claim against Deloitte are significantly different from each other, both legally and factually. Unlike *Latson v. Clarke*, Plaintiff's claims do not overlap in legal theories, as a battery claim and a Title VII retaliatory discharge claim are distinct causes of action that have different elements, require proof of different facts, and protect different legal interests. Indeed, a jury deciding a battery claim will not evaluate Deloitte's internal investigation or decision-making process, its personnel or auditing policies, or the complex nature of the accounting error that underlies the basis for Deloitte's decision to terminate Plaintiff. Similarly, the jury will not evaluate the Choptank dinner events in order to decide Plaintiff's claim against Deloitte.

Similar to *Latson v. Clarke*, Plaintiff's action only includes allegations of physical force by Mr. Wilson. The allegations against Mr. Wilson and Deloitte are significantly different in terms of time period, location, documents and individuals involved. Plaintiff's battery claim is alleged to have occurred by Mr. Wilson at the Choptank restaurant on May 29, 2024. Plaintiff's retaliation claim is alleged to have occurred by Deloitte on March 10, 2025. Compl. ¶¶ 8, 20. Plaintiff does not allege that she ever engaged in a protected activity with Mr. Wilson, that Mr. Wilson conducted an internal investigation on behalf of Deloitte into Plaintiff's alleged reports of harassment and

discrimination, or that Mr. Wilson had any authority to terminate Plaintiff, to change her title, or to make any decisions regarding her pay and/or benefits. Moreover, there is no evidence to show or suggest that, prior to her termination, Plaintiff reported to Deloitte that Mr. Wilson touched her thigh or that he had any physical contact with her while in the bathroom at the Choptank dinner.

Plaintiff's claims are significantly different from one another because the facts required for Plaintiff to prove the requisite elements for her claims of battery and retaliation are separate and distinct, as they involve different actors, time periods, locations, evidence and legal theories.

**2. Plaintiff's battery claim requires different witnesses and different documentary proof than her Title VII retaliatory discharge claim.**

The second factor is whether the separable issues require different witnesses and documentary proof. *Latson*, 2016 U.S. Dist. LEXIS 195277 at *15. Here, Plaintiff's claims require fundamentally different evidentiary presentations. For Plaintiff's claim against Deloitte, it is reasonable to expect that the scope of trial will include a considerable amount of documentary evidence and multiple witnesses involved in Deloitte's investigative process and decision-making process that lead to the termination decision. Conversely, little if any such evidence is pertinent to Plaintiff's battery claim against Mr. Wilson. As to the alleged events of battery itself, the only known witnesses are Plaintiff and Mr. Wilson.

The evidentiary presentation for Plaintiff's retaliation claim against Deloitte will include testimony from expert accountants, employees of Deloitte's Talent Relation's team that were involved in the February 2025 internal investigation, Deloitte's employees involved in the decision to place Plaintiff on leave and ultimately terminate her, Deloitte's employees who were on Plaintiff's audit team, and Deloitte's employees who supervised Plaintiff. The anticipated documentary proof will include Deloitte's internal investigation records, including numerous employee interviews and internal communications, personnel records, performance evaluations,

communications between Deloitte and Plaintiff, communications surrounding the breach of accounting protocol and the termination decision, Deloitte's employee handbook and internal policies, internal auditing records, and audit standards and procedures. None of the foregoing pertains to Plaintiff's battery claim and Mr. Wilson – and Mr. Wilson will be unfairly prejudiced by a jury reviewing Deloitte's investigation and decision-making process to the extent that same involves evidence pertaining to Plaintiff's claims that have now been dismissed (Intentional Infliction of Emotional Distress as against Mr. Wilson, and Hostile Work Environment as against Deloitte). Plaintiff's battery claim and retaliation claim require different witnesses and documentary proof and provide a strong basis for severance.

**3. Severance will not prejudice Plaintiff.**

The third factor is whether Plaintiff will be prejudiced if this Court severs the case. *Id*. at *16. Severance will not deprive Plaintiff of the ability to pursue her claims, present relevant evidence, or obtain relief available to her under the applicable law. Indeed, there will not need to be more discovery or other activities other than ruling on pretrial motions and the trial proceeding. Severance will merely require Plaintiff to litigate distinct claims against distinct parties in separate proceedings and there is no basis that Plaintiff will suffer any significant delay in separate trials (each of which should require fewer days than the combined trial days presently scheduled).

The factual issues underlying each claim are independently adjudicable, as resolution of the battery claim will not determine whether Plaintiff engaged in a protected activity under Title VII, whether Deloitte's employment decision-makers knew of that activity, whether Plaintiff's breach of auditing protocol constituted pretext, or whether Plaintiff's termination was retaliatory. Indeed, discovery has closed in this action and the evidentiary record is complete, thus severance will not impair Plaintiff's ability to obtain and present relevant evidence.

Moreover, should Mr. Wilson remain in this action, Plaintiff may be prejudiced due to evidence being deemed irrelevant or unfairly prejudicial against Mr. Wilson, thus preventing her from presenting evidence that would otherwise be admissible against Deloitte, and *vice versa*. Accordingly, separate proceedings will not deprive Plaintiff of any substantive right to present the testimony and documentary evidence relevant to each claim, and she will remain entitled to seek the relief she seeks from each party without confusion of the issues, confusion of the evidence, or confusion of the jury.

**4. Mr. Wilson will be prejudiced if Plaintiff's claims are not severed.**

The fourth factor is whether Mr. Wilson will be prejudiced if this Court denies his request for severance. *Id*. In *Latson v. Clarke*, this Court held that severance was necessary because, due to the differing and "extreme allegations" against each defendant, trying the claims together may cause the jury to conflate the factual allegations, thereby holding one defendant accountable for the factual allegations against the other defendant. *Id*. at *16-17. Here, similar to *Latson v. Clarke*, trying Plaintiff's claims together presents a substantial risk that evidence relevant to the retaliation claim will improperly influence the jury's consideration of the factual allegations in Mr. Wilson's battery claim, especially since the evidentiary record is devoid of facts to show that Plaintiff reported Mr. Wilson's alleged battery to Deloitte during its investigation. The jury will hear evidence concerning Deloitte's internal investigation into the relationship between Plaintiff and Mr. Wilson and the circumstances surrounding Deloitte's decision to terminate Plaintiff and Mr. Wilson. Thus, Mr. Wilson will be associated with Plaintiff's termination and Mr. Wilson risks being associated with the alleged wrongdoing of Deloitte, as the jury could combine or conflate Plaintiff's allegations of battery against Mr. Wilson with Deloitte's decision to terminate Plaintiff, thereby unfairly prejudicing Mr. Wilson's defense.

Mr. Wilson should not be required to defend a common law tort claim in a trial that will be consumed by a substantially broader employment dispute against Deloitte, particularly where the evidence necessary for Plaintiff to litigate her retaliation claim has no bearing on Mr. Wilson's alleged liability. Similarly, Plaintiff's damages that could potentially arise from her battery claim cannot be fairly adjudicated in an action that involves Deloitte's audit, investigation or termination decision. These risks cannot be cured by a jury instruction, as the sheer volume of the employment related evidence, significantly different factual allegations, and the legally complex nature of a retaliation claim and the underlying evidence create a near certainty of evidentiary spillover and jury confusion. Severing Mr. Wilson from this action will protect against the unfair prejudice that will inherently result from the evidence necessary to litigate Plaintiff's claim against Deloitte, as Mr. Wilson and Plaintiff will have the opportunity to try the battery claim on its own evidentiary record.

**5. Trying Plaintiff's claims together will be fundamentally unfair to Mr. Wilson.**

The fifth factor is whether the presence or absence of severance will impact fundamental fairness. *Id.* When evaluating this factor, this Court considers the unfair time and expense that will be incurred by the parties. *Id.* Here, should Plaintiff's claims be tried together, Mr. Wilson will be subjected to substantial disparity by being forced to incur the unnecessary legal fees and general expenses associated with a much more complex and longer trial as required by Plaintiff to present her retaliation claim against Deloitte, and for Deloitte to present its defense. Rather than allowing the jury to focus on the narrow and straightforward scope of the battery claim, the jury will be required to navigate an extensive evidentiary record of much more complex legal theories combined with a sheer increase in volume of facts, witnesses, and expert testimony surrounding Deloitte's internal investigation, its accounting procedures, its termination procedures, employee

dynamics and responsibilities, and Plaintiff's employment history and the fact of her termination - none of which are relevant to Plaintiff's battery claim.

As demonstrated, this additional trial time imposes a disproportionate litigation burden on Mr. Wilson, as he will be bear the burden of significant expenses in relation to extensive fact witness testimony, expert testimony, and documentary evidence that are wholly unrelated to Plaintiff's battery claim against him. In the interest of fundamental fairness, Mr. Wilson should not be required to defend a battery allegation in the midst of a trial where its length and complexity will be driven by Plaintiff's separate employment dispute with Deloitte. Severance would avoid imposing the unnecessary burden of significant trial time and expense on Mr. Wilson, while allowing Plaintiff to fully litigate both of her claims.

**6. Severance will not result in an unnecessary drain on judicial resources.**

The sixth factor is whether severance will impact judicial economy. *Id.* When evaluating judicial economy, this Court weighs the preservation of judicial resources against the drain on judicial resources created by separating claims. *Id.* at *17-18. In *Latson v. Clarke*, this Court reasoned that not severing the claims would likely preserve judicial resources because it would be easier for this Court to facilitate coordinated discovery, hearings, and trial. *Id.* at *18. In contrast to *Latson v. Clarke*, discovery and has concluded in this action, as has dispositive motions practice. Further, as previously established in this Motion's permissive joinder analysis, Plaintiff's claims do not present a common question of law and fact, as Plaintiff's claims require a showing of different elements and evidentiary proof. Therefore, Plaintiff will not be adjudicating the same facts and issues against Mr. Wilson and Deloitte that would enable this Court to preserve judicial resources at one trial. Accordingly, it is reasonable to presume that the presentation of Plaintiff's battery claim against Mr. Wilson at her separate trial with Deloitte would be of a similar duration

if tried separately, and thus severance is unlikely to result in a difference in or draining of this Court's judicial resources.

**7. Severance will not cause undue delay of Plaintiff litigating her claims.**

The seventh factor is whether severance will cause undue delay. *Id*. In *Latson v. Clarke*, this Court rejected the plaintiff's argument that severance would cause undue delays because he, his family, and expert witnesses would have to testify twice. *Id*. This Court reasoned that severance would not prevent the plaintiff from proceeding simultaneously in a different court. *Id*. Here, Plaintiff's battery claim requires her to present a different set of facts and evidentiary support than her retaliation claim against Deloitte. In addition, discovery has concluded, and thus severance will not require Plaintiff to duplicate her efforts in obtaining relevant evidence for her case against Mr. Wilson, nor will her opportunity to present her case against Mr. Wilson in a separate case result in undue delay of her ability to do so.

**8. Severance will not result in duplicative litigation or inconsistent verdicts.**

The eighth and final factor in this Court's severance analysis is whether severance of Plaintiff's claims will result in duplicative litigation or inconsistent verdicts. *Id*. As previously addressed, Plaintiff's battery claim and retaliation claim assert a distinct set of factual allegations against two different actors, at different times, and involving different evidence. The requisite elements for battery are separate and distinct from a retaliation claim, and thus require different showings of evidentiary support. Plaintiff's battery claim and retaliation claim do not involve common questions of law or fact, as they involve different legal analysis, and thus present no bearing on the liability of Mr. Wilson or Deloitte. Accordingly, severance will result in separable, distinct litigation that run no risk of inconsistent verdicts.

### C. In the Interest of Justice, Plaintiff's Battery Claim Against Mr. Wilson Should be Transferred to the Greenbelt Division of the United States District Court for the District of Maryland.

If this Court grants Mr. Wilson's request for severance, Mr. Wilson should be transferred to the Greenbelt Division of the United States District Court for the District of Maryland because the convenience of the parties, convenience of the witnesses, and interest of justice outweigh Plaintiff's choice of forum in the Alexandria Division of the Eastern District of Virginia - which (after dispositive motions practice) has no relation to Plaintiff's battery claim. *Id*. at *8-9, 19-20 ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division . . . where it might have been brought[.]"); *See* also 28 U.S.C. § 1404(a). Pursuant to 28 U.S.C. § 1391(b), a case "may be brought in… (1) ) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." *Id*. at *8-9. Applying this Court's Local Rules to Section 1391(b)(2), "venue is proper in 'a [division] in which a substantial part of the events or omissions giving rise to the claim occurred[.]'" *Id*. at *9 (citing E.D. Va. Loc. Civ. R. 3(C)).

"As a threshold issue, this Court must determine whether the proposed transferee forum is one where Plaintiff might have brought this suit based upon the severed claims." *Id*. at *20 (citing 28 U.S.C. § 1404(a)). Here, Mr. Wilson is a resident of Burtonsville, Maryland, and Plaintiff is a resident of Atlanta, Georgia. Compl. ¶¶ 7, 10. In addition, all of the events giving rise to Plaintiff's battery claim against Mr. Wilson occurred in Maryland. *See* Compl., generally. Plaintiff alleges that Mr. Wilson's conduct that gave rise to her battery claim occurred at the Choptank restaurant in Annapolis, Maryland. Compl. ¶20. Specifically, Plaintiff alleges that while at the Choptank

restaurant on May 29, 2024, Mr. Wilson touched Plaintiff's thigh under a table and later pushed her arm to the side while attempting to kiss her in a bathroom stall. Compl. ¶¶ 20-29. Accordingly, transferring Mr. Wilson to the District Court of Maryland is proper under diversity jurisdiction because Plaintiff, a resident of Georgia, could have brought this action in that venue insofar as Mr. Wilson is a resident of Maryland and all of the events giving rise to her battery claim against Mr. Wilson occurred in Maryland. Compl. ¶¶ 7, 10.

Once proper venue is established, this Court then considers the following factors when determining whether to transfer venue: "'(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice.'" *Latson*, 2016 U.S. Dist. LEXIS 195277 at *9 (quoting *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (citations omitted). "The movant bears the burden to establish that transfer is proper in light of these factors. *Id.* (citing *Chruby v. Glob. Tel*Link Corp.*, 119 F. Supp. 3d 399, 403 (E.D. Va. 2015)).

With respect to the first factor, "plaintiff's choice of venue is typically entitled to substantial weight… [h]owever, the amount of weight varies depending on the significance of the contacts between the venue chosen by the plaintiff and the underlying cause of action. *Id.* at *20-21 (citing *Bd. of Trustees v. Sullivan: Ave. Properties, LLC,* 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)); *See* also *JTH Tax, Inc. v. Lee,* 482 F. Supp. 2d 731, 736 (E.D. Va. 2007). Here, the weight accorded to Plaintiff's choice of venue is significantly weakened following this Court's dismissal of her Intentional Infliction of Emotional Distress claim against Mr. Wilson, as the events giving rise to that claim occurred at the Choptank restaurant in Maryland, Deloitte's offices in Virginia, and the Grazie Mille restaurant in Washington, D.C. *See* ECF. 259; *See* also Compl. ¶¶ 8, 20-29, 38-42. Plaintiff's remaining claim of battery against Mr. Wilson has no contact to the Commonwealth of

Virginia or this Court, as the underlying cause of Plaintiff's action arose in Maryland and neither Plaintiff nor Mr. Wilson are residents of Virginia.

With respect to the second factor, transfer of venue will not result in significant inconvenience to the witnesses, as the Greenbelt Division of the District Court of Maryland is located approximately 25 miles from the Alexandria Division of the Eastern District of Virginia.

With respect to the third factor, the convenience of the parties weighs in favor of Mr. Wilson, as Mr. Wilson resides in Maryland and Plaintiff resides in Georgia. In filing this action in Virginia, Plaintiff has continued to travel to Virginia to litigate her claims against Mr. Wilson. Presuming Plaintiff travels to the Alexandria Division of the Eastern District of Virginia by airplane, the nearest airport, Ronald Reagan Washington National Airport, is approximately fifteen to twenty minutes from the Alexandria Division of the Eastern District of Virginia and twenty to thirty minutes from the Greenbelt Division of the District Court of Maryland. For these reasons, transfer of venue will not inconvenience either party.

With respect to the fourth and final factor, "[t]he interest of justice 'encompasses public interest factors aimed at systemic integrity and fairness,' *Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 505 (ED. Va. 2012), along with 'all those factors bearing on transfer that are unrelated to convenience of witnesses and parties,' *Bd. of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1260 (ED. Va. 1988)." *Latson*, 2016 U.S. Dist. LEXIS 195277 at *22-23. In *Latson v. Clarke*, this Court reasoned that transfer of venue for a severed claim from the Alexandria Division of the Eastern District of Virginia to the Western District of Maryland was in the interest of justice because it would allow a local court to evaluate claims for events that occurred in its jurisdiction. *Id*. Similarly, Plaintiff asserts a state tort claim against Mr. Wilson, and pursuant to Virginia's choice-of-law doctrine, Maryland law governs

Plaintiff's battery claim. See *Hazelwood v. Law. Garage, LLC*, 81 Va. App. 586 (2024) (The settled rule in Virginia is that the substantive rights of the parties in a multistate tort action are governed by the law of the place of the wrong.). Accordingly, transfer of venue to the Greenbelt Division of the District of Maryland is in the interest of justice because public interest favors a local court applying its own laws to claims that arise within its territorial jurisdiction.

For the forgoing reasons, while the claim against Mr. Wilson may have been properly joined in this action when it was filed, that is no longer the case after dismissal of the Intentional Infliction of Emotional Distress claim (which involved allegations of conduct in the Commonwealth of Virginia). Should this Court grant Mr. Wilson's request for severance, transfer of venue to the Greenbelt Division of the United States District Court for the District of Maryland would be proper and just.

## V. CONCLUSION

For the foregoing reasons, Count (V) of the Complaint should be severed from this action, venue should be transferred to the Greenbelt Division of the United States District Court for Maryland, and this Court should award such other and further relief in favor of Mr. Wilson as may be just and proper.

Dated: November 13, 2026

Respectfully submitted,

SCOTT WILSON

By Counsel

KIERNAN TREBACH LLP

*/s/ Alan S. Block*
Alan S. Block, VSB 32528
Michael L. Pivor, VSB No. 75312
Sarah J. Vardian, VSB No. 1000032
Kiernan Trebach LLP

1776 I Street, N.W., Sixth Floor
Washington, DC 20006
202-712-7000 (T); 202-712-7100 (F)
ablock@kiernantrebach.com
mpivor@kiernantrebach.com
svardian@kiernantrebach.com
*Counsel for Scott Wilson*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

Richard M. Reice, Esq.
Mari K. Bonthius, Esq.
Eric Small, Esq.
Sterlington, PLLC
228 Park Avenue S #97956
New York, New York 10003
richard.reice@sterlingtonlaw.com
mari.bonthuis@sterlingtonlaw.com
*Attorneys for Plaintiff Melanie DeCanio*

John C. Cook, Esq.
Cook Legal Solutions, PLLC
3975 University Drive, Ste. 360
Fairfax, VA 22030
jcook@cooklegalsolutions.com
*Attorney for Plaintiff Melanie DeCanio*

Nathaniel M. Glasser, Esq.
Epstein, Becker & Green, PLLC
1227 25th Street NW, Suite 700
Washington, D.C. 20037-1175
Tel: (202) 861-1863
Fax: (202) 861-3081
NGlasser@ebglaw.com

David W. Garland Esq.
Brittany J. Finder, Esq.
Epstein, Becker & Green, PLLC
875 Third Ave
New York, New York 10022
Tel: (212) 351-4500
Fax: (212) 878-8600
DGarland@ebglaw.com
BFinder@ebglaw.com
*Attorneys for Defendant Deloitte & Touche LLP*

*/s/ Alan S. Block*
Alan S. Block, VSB # 32528